439 P.2d 489

Joel Fletcher WELLS and Lena Lois Wells, husband and wife, Appellants,

v.

TANNER BROTHERS CONTRACTING COMPANY, Inc., an Arizona corporation, Appellee.

No. 7761.

Supreme Court of Arizona, In Division.

April 3, 1968.

Rehearing Denied April 30, 1968.

Rees, Estes & Browning, by Paul Rees, Tucson, for appellants.

Snell & Wilmer, by Roger W. Perry, Phoenix, for appellee.

BERNSTEIN, Justice.

This is an automobile accident case. Joel F. Wells, appellant herein, brought an action against Tanner Brothers Contracting Company (hereafter referred to as Tanner), appellee, to recover damages for personal injuries sustained by him as a result of the alleged negligence of the appellee. A previous trial resulted in a jury verdict of $30,000 for Mr. Wells but the trial court granted a motion for a new trial to Tanner. Mr. Wells did not appeal from the order granting the new trial and at the conclusion of the second trial the jury returned a verdict for Tanner. This appeal is from the order denying appellant's motion for a new trial at the end of the second trial, or in the alternative, for reinstatement of the previous jury verdict.

Although there is some conflict in the evidence we have repeatedly held that on appeal this court must review the evidence and the inferences to be drawn therefrom in the light most favorable to sustain the judgment of the lower court. See, e. g., Cantlay & Tanzola, Inc. v. Senner, 92 Ariz. 63, 373 P.2d 370. With this in mind the record reveals the following facts. On April 2, 1959, Tanner, pursuant to a contract with the state, was engaged in rebuilding and widening Highway 95, also known as Avenue "B", in the City of Yuma, Arizona. As part of this project a pile of gravel approximately 1200 feet long, 4 to 5 feet high, and 10 to 14 feet wide was spread over the center of the roadway. The first warning sign was placed several blocks north of the windrow of gravel. It read: "First Warning—Construction Zone—Reduce Speed." A second sign located south of the first was turned over on the ground. There was a third sign placed approximately one and one-half blocks south of the first warning marker which read: "Third Warning—Dangerous but Passable—Speed Limit 20 m. p. h." These signs were 4 feet by 8 feet in size. Although barricades with flashing lights on them were in place at various points, including the north end of the windrow, at approximately 5:00 P.M., the record indisputably shows that at 7:30 P.M., the time of the accident, no flashing barricade was in place at the north end of the gravel pile. After the accident a flashing barricade was found in a neighbor's front yard. Mr. Wells was proceeding south on Avenue "B" in his truck, and while attempting to pass another vehicle at a speed of approximately 35 m. p. h. he struck the north end of the gravel pile and was seriously injured.

At the threshold appellant contends that the lower court erroneously granted a new trial to Tanner at the conclusion of the first trial. The novel argument proposed to us is that an appeal need not necessarily be taken from an order granting a new trial but, instead, the propriety of that order can be challenged on the appeal from the judgment entered after the jury verdict at the end of the second trial. The appellant argues that the trial court's intermediate orders refusing to reinstate the first jury

verdict, or to reconsider the order granting a new trial, although in themselves not appealable, are subject to review when an appeal is perfected from the final judgment entered at the conclusion of the second trial. Consequently, if these intermediate orders are subject to inspection then the propriety of the order granting the new trial is indirectly subject to review.

In order to analyze this argument we must examine our statutes governing appellate procedure. A.R.S. § 12–2101, as then written provided:

"  *  *  *  An appeal may be taken to the supreme court from the superior court in the instances specified in this section.

\*    \*    \*    \*    \*    \*

"F. From an order:

"1. Granting or refusing a new trial, or granting a motion in arrest of judgment."

It is quite clear that under this provision an order granting a new trial is substantively an appealable order. Appellant's position also requires that we interpret A.R.S. § 12–2102 subsec. A, which provides in part:

"A. Upon an appeal from a final judgment, the supreme court shall review any intermediate orders involving the merits of the action and necessarily affecting the judgment  *  *  *"

A tracing of the legislative history of A.R.S. §§ 12–2101 and 12–2102 reveals that both sections were substantially adopted from our sister state of California. See West's Ann.C.C.P. § 963 and § 956. However, § 956, West's Ann.C.C.P., contains a statement which was not included in § 12–2102, subsec. A of the Arizona statute. That sentence reads as follows: "The provisions of this section do not authorize the court to review any decision or order from which an appeal might have been taken." Nevertheless, as we read this statute the sentence quoted above is merely surplusage, and is implicit in A.R.S. § 12–2102, subsec. A.

Moreover, in California an order granting a motion for a new trial, if not appealed from, is not reviewable on appeal from a subsequent judgment rendered upon a retrial of the cause. Wolfson v. Beatty, 118 Cal.App.2d 392, 257 P.2d 1017. In the case at bar appellant contends that this court can review the lower court's intermediate orders which in effect refused to reinstate the first jury verdict, and that therefore we can review indirectly the lower court's order granting a new trial to Tanner. We do not agree. As we see it, if no appeal is perfected from an order granting a new trial the right to appeal will be deemed abandoned. Consequently, that order will become *final* when the time for appeal has run and cannot be questioned either directly or indirectly at some later date. To hold otherwise would allow a party to have his cake and eat it too. One might then decide to retry every case envisioning the possibility of a larger verdict in the second trial. Nothing could be lost, of course, for if the second trial proved fruitless one might then appeal the original order granting the new trial under the guise of some intermediate order entered during the second trial. With the appellate process already strained with a backlog of cases there is no reason to burden it further with the possibility that an appeal may involve review of two separate trials. Therefore we hold that an order granting a new trial must be appealed or the right to challenge it will be deemed waived.

Appellant also contends that the lower court's order granting Tanner a new trial could not have been appealed because it was not in appealable form. He argues that since the order was not signed by the judge it was not procedurally appealable. However, Rule 58(a), Rules of Civil Procedure, 16 A.R.S., which requires, in part, that all judgments be in writing and signed by a judge, did not become effective until October 31, 1961, approximately six months after the date of the trial court's order granting a new trial. Consequently, at the time the order was filed it was in appealable form under the old Rule 58(a)

without the necessity of being signed by the judge.[1]

Appellant next assigns as error that appellee improperly brought the fact of workmen's compensation coverage before the jury. This court has recently stated that "* * * where the insurance coverage is for workmen's compensation, it would seem to be clear that such coverage is irrelevant and that it is improper to introduce it with no apparent purpose other than to influence the jury." Miller v. Schafer, 102 Ariz. 457, 432 P.2d 585, 586 (1967). However, the courts are in agreement that where the error is induced by the complaining party the case will not be reversed. See, e. g., Adams v. Southern Pac. Co., 82 Cal. App.2d 560, 186 P.2d 729; 77 A.L.R.2d 1154, 1163–1165.

In the case at bar, the first reference to the Industrial Commission was made on the direct examination of Dr. Wall by appellant's counsel. The relevant testimony follows:

"Q. With reference to Exhibit 2, this is Defendant's Exhibit 2, dated February 18, 1960, are you aware of this particular report to the Industrial Commission of Arizona?"

"A. I believe this was a copy sent to me. At least I had a copy of it, yes."

The report mentioned in the above testimony was issued by a Board of Medical Examiners to the Industrial Commission explaining the extent of the appellant's disability. On cross examination counsel for appellee asked Dr. Wall the following questions:

"Q. Doctor, I had a bill which I understood you said had been sent to Mr. Wells, is that correct?"

\* \* \* \* \* \*

"Q. Doctor, did you tell us that was a bill to Mr. Wells?

"A. It was a bill, I would say it would appear to me to be a routine bill which I would send to—my girls would. I would assume the office made no error. I hire someone to do the billing for me.

"Q. When you are paid by the Industrial Commission to treat a patient do you bill a patient?

"A. The Industrial Commission pays you what you (sic) do under the law. If there is an error they will catch it.

"Q. The point is, Doctor, that the bill, which is marked Exhibit 14 in evidence, which bears your letterhead and is addressed to Joel Wells was not a bill at all, was it?"

\* \* \* \* \* \*

"Q. You have already referred to a report of a Board of Examiners made to the Industrial Commission of Arizona, sir?

"A. Yes, it was brought to my attention.

"Q. This was an industrial case then?"

\* \* \* \* \* \*

"A. At the time I examined the patient I did not know it was an industrial case. Later it was brought to my attention it was an industrial case, yes."

---

1. Before the amendment became effective on October 31, 1961, Rule 58(a) provided as follows:

"58(a) Entry. Judgment shall be entered when the court so directs. When the direction is that a party recover only money or costs, or that all relief be denied, the clerk shall enter judgment forthwith upon receipt by him of the direction, but when the direction is for other relief, the judge shall first promptly settle and approve the form of judgment. In cases of judgments for money or costs only, or that all relief be denied, the notation thereof in the civil docket, as provided by Rule 79(a) constitutes the entry of such judgment, and in cases granting any other relief, filing with the clerk of a form of judgment approved and signed by the judge, for recording in the civil order book, as provided by Rule 79(b) constitutes entry of such judgment, and in either case the judgment is not effective before such entry. The entry of the judgment shall not be delayed for taxing costs."

The testimony of Dr. Wall in answer to appellant's own questioning certainly, at least impliedly, revealed to the jury that this was an Industrial Commission case. Therefore, no prejudice can be complained of by appellant when on cross examination counsel for appellee merely reiterated this fact. Once appellant opens the door to this line of questioning his cries of prejudice are without merit. Moreover, where there was a genuine issue as to the validity of Dr. Wall's bill, and the fact that this was an Industrial Commission case was already before the jury, any prejudice which may have resulted was clearly outweighed by the relevancy of the true value of the doctor's services. In a hearing outside the jury's presence in this case it was alleged that the bill Dr. Wall sent to Mr. Wells was considerably larger than the bill he sent to the Industrial Commission. Under these particular facts we hold that the trial court did not err in permitting counsel for appellee to pursue this line of questioning.

Appellant's next two assignments of error deal with the trial court's refusal to give certain of his requested instructions. He also claims that the lower court committed reversible error when it gave a number of appellee's instructions. However, appellee argues that we cannot consider these assignments of error because the instructions are neither included in the transcript nor part of the instruments designated on appeal. But the instructions are in the Abstract of Record with notations as to whether they were given, refused, or modified. Appellee had ample time under Rule 3(b), Supreme Court Rules, 17 A.R.S., to file either a supplemental abstract or additional portions of the record in order to show that these were not the instructions actually given, but he chose not to do so. There would be little reason to require an Abstract of Record if this court could not consider the unchallenged contents thereof. We consider the abstract part of the record on appeal and since the instructions are included therein we shall consider appellant's assignments of error.

First, appellant contends that his requested instruction No. 8A should have been given by the trial court. That instruction read as follows:

"You are instructed that prior to the date of the accident in question defendant Tanner Brothers had contracted with the proper state and federal authorities to construct the road improvements mentioned herein as part of a regular construction project.

"In this contract defendant Tanner Brothers agreed, as contractor, to provide all necessary safeguards, safety devices and protective equipment, and take any other needed actions reasonably necessary to protect the safety of the public in connection with the performance of the work covered by this contract.

"Defendant Tanner Brothers, as contractor, was further charged by this contract with the duty to have due regard for the public health and to conduct the work in a safe manner as regards the public."

Appellant relies on Larsen v. Arizona Brewing Co., 84 Ariz. 191, 325 P.2d 829, to support the position that appellee's standard of conduct may be measured by its contract with the state. However, the Larsen case does not provide that an instruction similar to the one above need be given to the jury. The contract between Tanner and the state was in evidence and the jury could have considered it. Yet to require an instruction which would have constituted a comment on the evidence is strictly prohibited by Art. 6, § 27, of the Arizona Constitution, 1 A.R.S.

Moreover, the jury was properly instructed that the standard of care to be used in measuring appellee's conduct was that of ordinary care under the circumstances. In this case one of the circumstances which the jury might have considered was the existence and contents of Tanner's contract with the state. We hold, therefore, that the trial court properly refused this instruction.

Appellant also contends that the lower court erroneously gave a number of appellee's requested instructions. After an examination of the record we have concluded that appellant's position with respect to many of these instructions is without merit.[2] However, we shall discuss appellant's arguments with respect to five of the challenged instructions.

■ Before dealing with them individually, however, we should note that appellant also claims that the lower court gave repetitious instructions on contributory negligence which, he alleges, had the effect of misleading the jury. The general rule is well settled that

"While it is not good practice to repeat the same subject matter in several instructions after having once covered such points, the universal rule is that repetitious instuctions do not constitute reversible error unless it reasonably appears that the jury were [sic] misled." Reah v. Jupin, 68 Ariz. 335, 339, 206 P.2d 558, 561.

No useful purpose would be served by discussing the instructions seriatim. We have examined them, and reading them together conclude that they did not overemphasize the concept of contributory negligence, and in our opinion could not have misled the jury.

■ We shall begin our discussion of the five instructions with appellee's instruction No. 4. In short, this instruction explained to the jury that if they found that Tanner had placed a flashing barricade at the north end of the gravel pile, and thereafter it was moved, Tanner would not be responsible unless one of its agents had moved the barricade, or the barricade was absent for such a period of time that a reasonable person should have become aware that it had been removed, and thereafter replaced it. The thrust of appellant's argument with respect to this instruction is that there was no evidence in the record to support it. We disagree. The record reveals that a barricade had been placed at the north end of the windrow at 5:00 P.M. Since it was conspicuously absent from its prior location at 7:30 P.M. the jury could have drawn a reasonable inference that the barricade had been moved by some third person, and that appellee's conduct was not unreasonable in not discovering that the barricade was missing, particularly since the period between 5:00 and 7:30 P.M. on April 2, 1959, was during daylight hours. Consequently, we conclude that the lower court properly gave this instruction.

■ The next challenged instruction is appellee's instruction No. 15. It explained to the jury that a motorist is presumed to see traffic signs placed in accordance with the law to regulate the movement of vehicular traffic. See e. g., Curland v. Los Angeles County Fair Ass'n, 118 Cal.App.2d 691, 258 P.2d 1063. Since the record clearly shows that Mr. Wells saw that warning signs placed in the construction zone this instruction could hardly have been prejudicial, and we therefore conclude that no error was committed in granting it.

■ It is also contended that appellee's instruction No. 12 was improper. This instruction explained the concept of negligence per se to the jury, and informed them of various statutory provisions, the violation of which would constitute neg-

---

2. The following instructions we, are summarily disposing of for the reasons hereinafter given:

(a) Appellee's instruction No. 19 instructed the jury on the effect of an intervening third person removing the flashing barricade from the north end of the windrow, and appellant's argument with respect to this instruction is without merit for the same reasons discussed as to appellee's instruction No. 4, infra.

(b) Appellee's instruction No. 10 explained to the jury the concept of keeping a proper lookout and we find nothing wrong with this instruction. See, e. g., Scott v. Scott, 75 Ariz. 116, 252 P.2d 571.

(c) Appellee's instruction No. 7 defined the standard of care owed by both parties and was properly given.

ligence as a matter of law. These provisions referred to the proper side of the road to drive on, obeying official traffic control devices, and speed regulations in general and when approaching hazards. The evidence in this case supports this instruction. Appellant relies heavily on the case of J. H. Welch & Son Contracting Co. v. Gardner, 96 Ariz. 95, 392 P.2d 567, to support his position that it was error to instruct on negligence per se. His contention is based on the proposition that in the Welch case we held that the trial court properly refused an instruction which would have informed the jury that the plaintiff would be guilty of negligence per se if she did not reduce her speed when encountering special hazards. However, in that case we concluded that the evidence did not support the requested instruction because there was no evidence to show that the plaintiff knew of the special hazard since no warning barricade was in place. But in the case at bar the evidence clearly shows that Mr. Wells had driven on Avenue "B" on other occasions and admitted that he was aware of the warning signs and the special hazards of a construction zone. More important, one of the witnesses for the appellee testified that at the time of the accident the windrow of gravel was visible. Since we must take the evidence in the light most favorable to sustain the judgment of the lower court we conclude that the jury could have inferred that Mr. Wells was aware of the gravel pile. See A.R.S. § 28–701, subsecs. A and E; Yoo Thun Lim v. Crespin, 100 Ariz. 80, 411 P.2d 809; Scott v. Scott, 75 Ariz. 116, 252 P.2d 571; Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201. Consequently, in light of these facts this instruction was properly granted.

■ The same observation can be made with respect to the contention that appellee's instruction No. 22 was improperly given by the trial court. This instruction explained the concept of assumption of risk to the jury. It read as follows:

"A person is said to assume a risk when he knows that a danger exists in the condition, use or operation of property and voluntarily places himself within the area of danger. A person who thus assumes a risk is not entitled to recover for damage caused him which resulted from the dangerous condition to which he thus exposed himself."

Again we point out that the jury could have found that Mr. Wells was aware of the gravel pile by drawing an inference from the testimony of appellee's witness that the windrow was visible. Consequently, an instruction on assumption of risk was proper. Davis v. Waters, 103 Ariz. 87, 436 P.2d 906; Nichols v. Baker, 101 Ariz. 151, 416 P.2d 584; Miller v. George F. Cook Construction Co., 91 Ariz. 80, 370 P.2d 53.

■ Finally it is argued that the trial court in giving appellee's instruction No. 17 erroneously fixed the speed limit in the construction area at 20 m.p.h. as a matter of law. This instruction did not, as appellant claims, charge the jury that since Mr. Wells was traveling at a speed greater than 20 m.p.h. that he was therefore negligent. Rather, when read with a preceding instruction it merely informed the jury that the violation of a posted speed limit was "prima facie" evidence of negligence. This is certainly proper. See, e. g., Butane Corp. v. Kirby, 66 Ariz. 272, 187 P.2d 325. However, the problem arises with respect to whether the instruction constitutes a comment on the evidence. See Ariz.Const., Art. 6, § 27. This court has consistently held that facts established at a trial by uncontroverted evidence may be assumed by the court in an instruction without violating the constitutional prohibition of judicial comment on matters of fact. See Davis v. Burlington, 101 Ariz. 506, 421 P.2d 525; State v. Willits, 96 Ariz. 184, 393 P.2d 274; Wolff v. First Natl. Bank of Winslow, 47 Ariz. 97, 53 P.2d 1077. In the instant case Owen Layton, an Assistant District Engineer for the Arizona State Highway Department, a witness for the appellee, testified that he authorized the posted speed limit of 20 m. p. h. Although appellant

challenges his testimony in his brief he does not point to any contradictory evidence in the record before us. Consequently, we hold that the trial court did not err in giving this instruction.

Judgment affirmed.

McFARLAND, C. J., and LOCKWOOD, J., concur.