667 P.2d 213

Phyllis BRANNIGAN, Mother of Michael William Brannigan, Deceased, and Vertis Roberts, Sr. and Pauline Roberts, father and mother of Michael J. Roberts, Deceased, Plaintiffs-Appellants,

v.

Lee David Harry RAYBUCK and Rose Marie Raybuck, his wife, dba Good Time Inn, Defendants-Appellees.

Emery JORDAN and Joyce Jordan, father and mother of Danny Jordan, Deceased, Plaintiffs-Appellants,

v.

Lee David Harry RAYBUCK and Rose Marie Raybuck, his wife, dba Good Time Inn, Defendants-Appellees.

No. 16337–PR.

Supreme Court of Arizona, En Banc.

July 5, 1983.

---

Goldman & Kaplan by Alan Goldman, Vern E. Gasser, Phoenix, for plaintiffs-appellants Brannigan and Roberts.

Mark E. Meltzer, Phoenix, for plaintiff-appellant Brannigan.

Michael R. Sullivan, Phoenix, for plaintiffs-appellants Jordan.

Renaud, Cook & Videan by Joseph B. Swan, Jr., Kathleen A. Kelly, Phoenix, for defendants-appellees.

Langerman, Begam, Lewis & Marks by Stanley J. Marks, Phoenix, for amicus curiae Mothers Against Drunk Drivers (MADD).

William B. Revis, Phoenix, and Haralson, Kinerk & Morey by Burton J. Kinerk and Wallace R. Hoggatt, Tucson, for amicus curiae Arizona Trial Lawyers Ass'n.

Rawlins, Burrus & Lewkowitz by Joseph H. Garagiola, Jr., Phoenix, for amicus curiae Circle K. Corp.

FELDMAN, Justice.

Plaintiffs are the surviving parents of three boys, Michael William Brannigan, Michael J. Roberts and Danny Jordan, who were killed in a motor vehicle accident which occurred on October 8, 1978. The parents of all three filed wrongful death actions against the Raybucks (defendants), who operated a business under the style of "Good Time Inn." The parents alleged that the defendants had breached a duty of care by furnishing liquor to the boys and that this had been the cause of the accident in which all three were killed.

Defendants moved for summary judgment in each of the cases, claiming that under the common law of Arizona a tavern owner was not liable for negligence in fur-

nishing intoxicants to patrons who were underage or already intoxicated. The two trial judges who considered the cases in the superior court quite properly agreed that this was the law of Arizona and granted the motions for summary judgment. The cases were consolidated on appeal and in a memorandum decision (Nos. 1 CA–CIV 5536 and 1 CA–CIV 5736) the court of appeals held that prior case law required it to apply the common law rule that a tavern owner is not liable for negligence in furnishing intoxicants to an underage or intoxicated patron who, as a result, subsequently injures either himself or some third person. The court of appeals therefore affirmed the summary judgments granted the defendants.

All three plaintiffs joined in a petition for review to this court. We accepted review of this case and the transfer of the companion case of *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983) in order to reconsider the common law rule of tavern owners' nonliability and to determine whether that rule should be retained as the common law of this state. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and Ariz.R.Civ.App.P. 23, 17A A.R.S.

The facts are set out in the opinion of the court of appeals; we borrow their language: Roberts and Brannigan were passengers in a pickup truck driven by Jordan when the truck was involved in a one-car accident in which all three young men died. Roberts and Brannigan were both sixteen years of age and Jordan was seventeen years of age at the time of the accident. Viewing the evidence in a light most favorable to the plaintiffs, it is established that Jordan went to the Good Time Inn with his girlfriend on the evening of October 7, 1978, where he consumed several drinks of intoxicating liquor. He took his girlfriend home around midnight and returned to the bar, where he started drinking with Brannigan, Roberts and other friends. Several pitchers of beer and numerous drinks of tequila were consumed by the boys. By the time they all left the bar at 1:00 a.m. on Sunday they were all intoxicated. The Maricopa County Medical Examiner's report indicates

that Jordan, the driver of the pickup, had a blood-alcohol level of .23. Within minutes of leaving the parking lot, Jordan crashed the pickup into a wall. There is testimony that the employees of the bar did not check for age cards and that the Good Time Inn, owned by Mr. and Mrs. Raybuck, was patronized by Jordan and other teenagers because they were not checked for proof of their ages.

The grant of summary judgment by the trial court and affirmance by the court of appeals was predicated upon the principle that it is not the act of selling but, rather, the act of consuming liquor that is the proximate cause of the injury sustained by either the intoxicated customer or some third person, so that the tavern owner is therefore not liable for negligence in selling the liquor. This is the common law rule which has obtained in Arizona. *Ontiveros, supra.* We have today abolished that rule, holding that it is unsuitable to present society and is based on reasoning repugnant to modern tort theory. We held that causation in dram shop cases "should ordinarily be a question of fact for the jury under usual principles of Arizona tort law."

## DUTY

In *Ontiveros, supra,* we held today that the tavern owner was under a duty, imposed both by common law principles and statute, to exercise care in serving intoxicants to a patron who later injured a third party. The facts of the case at bench present a different question, since here one of the persons served, Jordan, inflicted the harm on himself as well as third persons. The third persons involved were not completely innocent participants, as in *Ontiveros,* but had participated with Jordan at the same "party."

Thus, these cases present the question of whether the tavern owner has a duty to the patron to withhold intoxicants in order to prevent the patron from injuring himself. While this question is of particular significance in the Jordan case, it also exists in the other cases since one might well argue

that Brannigan and Roberts contributed to their own demise by drinking with Jordan and getting in the truck with him. There was evidence that Jordan's state of intoxication was easily recognizable by both the barkeep and passengers. In fact, the evidence indicates that Jordan "staggered" from the saloon to the parking lot and a witness testified on deposition that as Jordan drove away, Mrs. Raybuck mentioned that "those boys will be lucky if they make it home alive tonight." While we have indicated above and in *Ontiveros, supra,* that we consider the act of furnishing liquor to be part of the chain of cause and effect leading to the accident, it is certainly to be acknowledged that the voluntary consumption is also part of that cause and effect. Therefore, we examine the question of duty in the context that the act of consumption by all three boys contributed to the occurrence of the accident.

There are cases holding that the seller of liquor is not liable for the mere sale of liquor to an intoxicated person who subsequently causes injury to himself as the result of intoxication. *Noonan v. Galick,* 19 Conn.Supp. 308, 310, 112 A.2d 892, 894 (1955); *see* 48A C.J.S. *Intoxicating Liquors* § 428 at 134 (1981). A growing number of cases, however, have recognized that one of the very hazards that makes it negligent to furnish liquor to a minor or intoxicated patron is the foreseeable prospect that the patron will become drunk and injure himself or others. *See Vesely v. Sager,* 5 Cal.3d 153, 164, 486 P.2d 151, 159, 95 Cal. Rptr. 623, 631 (1971). Accordingly, modern authority has increasingly recognized that one who furnishes liquor to a minor or intoxicated patron breaches a common law duty owed both to innocent third parties who may be injured and to the patron himself. *See Nazareno v. Urie,* Alaska, 638 P.2d 671 (1981); *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959); *Jardine v. Upper Darby Lodge No. 1973, Inc.,* 413 Pa. 626, 198 A.2d 550 (1964). These cases are but an example of the general rule that one who furnishes a dangerous instrumentality to a person not competent to use it is liable when that person misuses the item fur-

nished and injures himself or another. *See Bernethy v. Walt Failor's, Inc.,* 97 Wash.2d 929, 653 P.2d 280 (1982) (firearm given to intoxicated person who killed his wife). Restatement (Second) of Torts § 390 (1965) states:

> One who supplies . . . a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience or otherwise to use it in a manner involving unreasonable risk of physical harm to *himself* and others . . . is subject to liability for physical harm resulting to *them.*

(Emphasis supplied.)

■ We believe, therefore, that a supplier of liquor is under a common law duty of reasonable care in furnishing liquor to those who, by reason of immaturity or previous over-indulgence, may lack full capacity of self-control and may therefore injure themselves, as well as others.

Most courts have, however, relied on statutes to find the existence of duty upon which to base a cause of action. *See Davis v. Shiappacossee,* 155 So.2d 365 (Fla.1963); *Elder v. Fisher,* 247 Ind. 598, 217 N.E.2d 847 (1966); *Soronen v. Olde Milford Inn, Inc.,* 46 N.J. 582, 218 A.2d 630 (1966); *Smith v. Evans,* 421 Pa. 247, 219 A.2d 310 (1966); *Majors v. Brodhead Hotel,* 416 Pa. 265, 205 A.2d 873 (1965). In *Elder v. Fisher, supra,* for instance, the court found that the statute which prohibited the sale of alcohol to minors was the type of "prohibitory statute" which established duty and the violation of which constituted negligence. *Id.* at 602, 217 N.E.2d at 850. The court held that one of the reasons the statute had been enacted was to protect minors from the consequences of their own conduct and to prevent the very type of injury which we consider in the case at bench; the court stated that "it seems probable that the legislature intended to protect against the possible harm resulting from the use of intoxicating liquor by those to whom it was not to be sold." *Id.* at 603, 217 N.E.2d at 851. Likewise, the Florida Supreme Court in *Davis v. Shiappacossee, supra,* recognized that the Florida statute making it a crime to sell

intoxicants to a minor was intended "to preclude the harm that can come to one of immaturity by imbibing such liquors." *Id.* at 367. The court compared the application of a statutory duty in that case to the situation presented in *Tamiami Gunshop v. Klein,* 116 So.2d 421 (Fla.1959), which held that sale of a gun to a minor in violation of a city ordinance breached a duty and made the seller liable for injuries which the minor had inflicted upon himself. In *Tamiami,* the court had recognized that the

> almost universal American and English attitude is that where legislation prescribes a standard of conduct for the purpose of protecting life, limb, or property from a certain type of risk, and the harm to the interest sought to be protected comes about through breach of the standard from the risk sought to be obviated, then the statutory prescription of the standard will at least be considered in determining civil rights and liabilities.

*Id.* at 423.

We believe that A.R.S. § 4–244(9), which prohibits furnishing "spirituous liquor" to those under 19 years of age, and § 4–241(A), which requires a licensee to demand certain types of identification from those requesting service, constitute legislative recognition of the foreseeable danger to both the patron and third parties, and an effort to meet that danger by enactment of laws designed to regulate the industry, to protect third persons, and to protect those who are underage from themselves. Accordingly we find here, as in *Ontiveros, supra,* that the licensee and his employees have a duty recognized both by common law and statute to refrain from selling intoxicants to those who subnormal capacity for self-control is or should be known or who are prohibited by statute from using alcoholic beverages. We hold, therefore, that defendants were under a duty to all three of the decedents.

## STANDARD OF CARE

■ Defendants argue with some persuasive force that in many cases unjust results will be reached by recognizing that the statute is, in part at least, a safety measure designed for protection of patrons and third parties. They contend that the statute will thus be considered to set the standard of care so that its violation will always result in a finding of negligence per se. It is the prevailing rule, recognized in Arizona, that a breach of a statute intended as a safety regulation is not merely evidence of negligence but is negligence per se. *Orlando v. Northcutt,* 103 Ariz. 298, 300, 441 P.2d 58, 60 (1968); W. Prosser, *Handbook of the Law of Torts* § 36 at 197–200 (4th ed. 1971). It is true that *if* the statutory standard of conduct were applied rigidly, one who furnished liquor to a minor might be held to have breached his duty even though the minor produced false identification to satisfy the requirements of § 4–241, and one who furnished further intoxicants to an already intoxicated patron might be held liable even though the supplier had no way of knowing the patron had reached the point of intoxication.

As in most things, however, the common law is not so rigid as to demand injustice. The actual rule on the negligence per se doctrine is that unless the statute is construed to impose an absolute duty, its violation may be excused when, for example, the defendant was "unable after reasonable diligence to comply." Restatement of Torts, *supra,* § 288 A.

> [I]n the absence of a clear declaration by the legislature, the court reserves the final authority to determine whether the reasonable standard of conduct will always require obedience to the criminal law.
>
> Thus, it has been held not to be negligence to violate the letter of the statute because of physical circumstances beyond the [defendant's] control ... [or] where his violation is due to innocent ignorance of the operative facts which make the statute applicable ....

Prosser, *supra,* § 36, at 198–99; *see also Wells v. Tanner Brothers Contracting Company,* 103 Ariz. 217, 223–24, 439 P.2d 489, 495–96 (1968); *J.H. Welch & Son Contracting Co. v. Gardner,* 96 Ariz. 95, 102, 392 P.2d

567, 572 (1964); *Dayton v. Palmer,* 1 Ariz. App. 184, 187, 400 P.2d 855, 858 (1965).

■ We think this concept is applicable to the situation presented here. The legislature has not enacted a civil damage statute eliminating all excuse for the violation of the statute; thus, we are free to recognize that rule which we consider most likely to achieve just results. Prosser, *supra,* § 36, at 198. The statutes in question do not impose strict criminal liability. *Spitz v. Municipal Court,* 127 Ariz. 405, 407–08, 621 P.2d 911, 913–14 (1980). Even if they did, this would not prevent us from recognizing excusable violations when the statute is used to define a standard of care in civil cases. *See* Restatement of Torts, *supra,* § 288 A, comment b; Prosser, *supra.* We therefore hold that where a violation of the statutes pertaining to furnishing liquor to those who are underage or already intoxicated is shown, negligence exists as a matter of law, but under proper facts the jury may be allowed to find that the violation was excusable.[1] *O'Donnell v. Maves,* 108 Ariz. 98, 100, 492 P.2d 1205, 1207 (1972); *Platt v. Gould,* 26 Ariz.App. 315, 316–17, 548 P.2d 28, 29–30 (1976).

In dram shop cases, then, a licensee who has violated the statute may be able to show such violation excusable if he can establish, for instance, that the minor appeared to be of age and had what appeared to be proper identification as required by A.R.S. § 4–241 or that the demeanor or conduct of the person served was such that there was no reason to believe that he or she was intoxicated. The situations cited are intended as examples, and not as an exhaustive list.

## CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF THE RISK

■ We acknowledge that the boys in question were apparently of an age to understand and to control their conduct. The present record does not indicate that they were addicted to alcohol and therefore not responsible for their conduct. *Cf. Pratt v. Daly,* 55 Ariz. 535, 104 P.2d 147 (1940). The evidence establishes that they voluntarily obtained and consumed large amounts of intoxicating liquor and knew or should have known the danger involved in driving in that condition or riding with someone who was in that condition. No doubt their voluntary consumption was a cause of the accident. However, even assuming that the defenses of contributory negligence and assumption of the risk are available,[2] under our constitution these defenses "shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." Ariz. Const. art. 18, § 5. In Arizona, therefore, the court cannot find as a matter of law that the legal defenses of contributory negligence or assumption of risk exist; the jury is free to find in favor of the plaintiff even though the court ordinarily would find as a matter of law that the plaintiff has been contributorily negligent or has assumed the risk. *Layton v. Rocha,* 90 Ariz. 369, 370, 368 P.2d 444, 445 (1962). We therefore do not reach the question of contributory negligence.

1. Unexcused violations will continue to be considered as negligence per se and will require the usual jury instruction to that effect. *See* Recommended Jury Instructions, *Negligence* 7. However, when evidence of excuse is presented, an appropriate instruction should be given in lieu of the standard negligence per se instruction. *See, for example, Nichols v. Sonneman,* 91 Idaho 199, 206, 418 P.2d 562, 569 (1966).

2. We note, however, it has also been held that contributory negligence is not available as a defense to a tavern owner in fact situations such as that presented by this case. Some cases reason that the licensee's duty not to serve minors or intoxicated persons is one intended for the protection of that individual being served as well as the public in general. They hold that the duty would be without meaning if the tavern owner could avoid responsibility for its performance by claiming that it was the patron's own fault for drinking too much. *Soronen v. Olde Milford Inn, Inc.,* 46 N.J. at 589, 218 A.2d at 634; *Galvin v. Jennings,* 289 F.2d 15, 19 (3rd Cir.1961). Generally, where one is held liable for a violation of a statute intended to protect another against his own actions, contributory negligence is not considered a defense. Restatement of Torts, *supra,* § 483 comment c; Prosser, *supra,* § 65, at 425–26 and § 68, at 453–54.

## OTHER ARGUMENTS

Here, as in *Ontiveros*, defendants raise various examples which they claim militate in favor of nonrecognition of liability. For instance, defendants argue that there will be difficulty in administering a rule of liability in hypothetical situations where: (1) a patron has one drink in the first saloon and 19 drinks in a second saloon; (2) the patron has 19 drinks in the first saloon and one drink in the second; (3) the patron has 10 drinks in each saloon. We find these hypothetical situations no more vexatious than in other cases. In the first example, for instance, one could argue that the acts of the first licensee were a contributing cause of the ultimate accident, but it is obvious that in the usual case there is no negligence in serving a sober, adult patron one drink. In the second example, the act of serving the last drink may well have been negligent, but, again, causation would have to be proved. In the third situation, each of the licensees may have negligently contributed to the result and both may probably be held liable. These and similar situations present the same problems of causation which exist in other tort actions. They are not beyond the ability of our system to handle. *Lewis v. Wolf*, 122 Ariz. 567, 572, 596 P.2d 705, 710 (App.1979). We acknowledge that the system will not handle each case perfectly, but we think it better to adopt a rule which will permit courts to attempt to achieve justice in all cases than to continue to rely on one which guarantees injustice in many cases.

Defendants argue that by changing the common law rule we will impose upon the liquor business a special duty of care not imposed on sellers of most other products. To an extent that is true, but alcohol is more dangerous than most products. We do no more than place upon those who furnish alcohol the burden of responding in damages for failure to use due care in furnishing a dangerous product. However, we do not place upon them any greater burden in conducting themselves than that which had already been imposed by the requirements of statute which make it unlawful to sell liquor to minors or intoxicated patrons.

We agree with the New Jersey Supreme Court:

> Liquor licensees, who operate their businesses by way of privilege rather than as of right, have long been under strict obligation not to serve minors and intoxicated persons and if, as is likely, the result we have reached in the conscientious exercise of our traditional judicial function substantially increases their diligence in honoring that obligation then the public interest will indeed be very well served.

*Rappaport v. Nichols*, 31 N.J. at 205–06, 156 A.2d at 10.

Defendants next argue, as did those in *Ontiveros*, that this court should await legislative action and should not abandon the common law rule in the absence of such action. As we indicated in *Ontiveros, supra*, we do not think lack of legislative intent with regard to the existence of a civil remedy is determinative. We believe there is a legislative objective to keep drunk drivers off the roads. The magnitude of the problem is documented in the statistics quoted in *Ontiveros*. The problem in Arizona seems, if anything, to be greater than in other parts of the country. According to the statistics cited in the amicus brief filed in this cause by Mothers Against Drunk Drivers, between one-third and one-half of all fatal automobile accidents in Arizona involve alcohol and Arizona ranks fourth highest in the country in alcohol-related deaths and injuries. *See, also, State ex rel. Ekstrom v. Justice Court*, 136 Ariz. 1, 4, 663 P.2d 992, 996 (1983) (concurring opinion). Adoption of a rule which will make those who furnish alcohol to those who are forbidden to use it civilly responsible to pay damages for the injuries caused by their violation of law is a step designed to meet a problem which has become acute. This is not judicial legislation, but merely the response of the common law to changed social conditions. If the legislature considers it to be unwise, it has the means of so informing us.

## RETROSPECTIVE—PROSPECTIVE LIABILITY

Plaintiffs ask that if we abandon the rule of nonliability, we make the new rule of

liability applicable to the case at bench and all others not barred by the statute of limitations. Defendants argue, on the other hand, that retrospective application would be unfair and that any new rule of liability should apply only to accidents which occur subsequent to the date on which this decision is issued.

■ In civil actions, Arizona law has always been "that unless otherwise stated, a court opinion operates retroactively as well as prospectively." *Chevron Chemical Co. v. Superior Court,* 131 Ariz. 431, 435, 641 P.2d 1275, 1279 (1982); *O'Malley v. Sims,* 51 Ariz. 155, 160–62, 75 P.2d 50, 52–53 (1938). Thus, there is a presumption that opinions of Arizona appellate courts are retroactive as well as prospective. *Chevron Chemical Co.,* 131 Ariz. at 436, 641 P.2d at 1280.

In *Chevron Chemical Co., supra,* we applied the three-part test set out in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), to determine if this presumption of retroactivity had been overcome and if a decision should apply only prospectively.

> That test suggests that in order for an opinion to have prospective application only, the opinion (1) must have established a new legal principle by either overruling clear and reliable precedent or by deciding an·issue whose resolution was not foreshadowed; (2) must affect adversely the purpose behind the rule in question, and (3) must produce substantial inequitable results if applied retroactively.

*Chevron Chemical Co., supra.*

In applying the first factor of the test, we acknowledge that today's decisions overrule clear precedent. We believe, however, that this result was certainly foreshadowed. There has been a continued assault upon the common law rule in a line of cases which are cited in *Ontiveros, supra.* In most of the cases, the court of appeals clearly indicated that it was applying the common law rule only because it felt bound

by precedent to do so. *See Lewis v. Wolf, supra.* However, the trend of authority in other states and the continued progression of dram shop cases through the Arizona courts certainly should have alerted all but the most complacent to the danger that the rule would eventually be changed and that they, like most others, would become civilly liable for violating the law.

With respect to the second factor, we do not find that the change in the law adversely affects the underlying purpose for the law. Removing the rule of nonliability would probably have a neutral effect on tort principles, and could possibly be viewed as furthering the underlying purpose of providing compensation for negligently inflicted injuries.

Finally, we do not believe substantial inequitable results will be produced by retroactive application. Defendants, and all others in the liquor business, have never been entitled to rely upon the lack of civil liability. The acts for which defendants are now being subjected to civil liability have long been criminal. Defendants cannot complain, therefore, that they are being made to pay for conduct which, under prior law, was held proper. Further, and most important, is the question of relative fault. In those cases in which defendants have furnished liquor to minors or intoxicated persons, they have been guilty of a crime. Many of those who have been injured are blameless. We acknowledge that this reasoning is more applicable to the plaintiffs in the *Ontiveros* situation than it is to the decedents in this case. Even under the facts of this case, however, it was the policy of the law to protect the decedents from the consequences of their own conduct and the law laid upon the defendants an obligation to assist in this social policy. In the probable majority of cases, of course, the question comes simply to choosing between a defendant whose past conduct violated the law and a victim, relatively blameless, who has been injured or killed.[3] Retrospective

---

3. Defendants ask us to speculate that the liability insurance policies which they and others may have purchased may exclude coverage for

dram shop liability since no such liability was heretofore recognized in Arizona. This fear led the New Mexico court to conclude that its

application favors the latter and prospective favors the former.

■ Thus, even if the three-part test of *Chevron Oil Co. v. Huson* is interpreted liberally, so that the proponent of prospective application is not required to satisfy all three elements of the test, we believe that on balancing the equitable considerations, retrospective application is the proper rule. We have reached similar results in similar cases. *See, e.g., Stone v. Arizona Highway Commission,* 93 Ariz. 384, 392, 381 P.2d 107, 112 (1963) (sovereign immunity abolished both for the *Stone* case and "all other pending cases, those not yet filed which are not barred by the statute of limitations and all future causes of action").

We hold, therefore, that the former rule of nonliability based on causation is abolished, and the duty of a licensee to refrain from selling alcohol to minors and intoxicated patrons who may, as a result, injure themselves or others is recognized for this case, for all other pending cases, for those not yet filed which are not barred by the statute of limitations, and for all causes of action which may arise in the future.

The decision of the court of appeals is vacated. The judgments below are reversed. The cases are remanded for further proceedings not inconsistent with this opinion.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

HOLOHAN, Chief Justice, concurring and dissenting.

Although I concur in the disposition of this case, I do so on a much narrower basis than the majority. The discussion of common law duty found in the majority opinion is, for me, interesting but irrelevant.

My resolution of the duty issue is based upon the statutory provisions regulating the dispensing of liquor. The debate about dynamic principles of changing times and changing conditions is meaningless when the public policy of the state can be found in the statutes.

Being satisfied that A.R.S. § 4–244(9) imposes a duty on a tavern owner to refrain from serving liquor to persons under 19 years of age, I concur in the disposition of this case.

On the issue of retrospective application, I dissent from the majority's position. I believe that the principles set forth in *Chevron Chemical Co. v. Superior Court,* 131 Ariz. 431, 641 P.2d 1275, and in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) concerning retroactivity of decision have largely been ignored.

The decision today overrules a line of authority which is at least 40 years old. The majority maintains that the result was foreshadowed because there was a continual assault upon the old rule. All those assaults were in vain. Even the eloquent plea in *Lewis v. Wolf,* 122 Ariz. 567, 596 P.2d 705 (1979) did not move this court to change the law. Now some four years after *Lewis v. Wolf* we are doing so. In light of this history somehow the foreshadowed argument limps. It is worthy of note that the panel of the Court of Appeals which heard this case found the law so clear that a memorandum decision was issued affirming the denial of relief to the plaintiffs.

Another reason for non retroactive application of a decision is that substantial inequitable results may occur if it is applied retroactively. The majority's answer to the claim of hardship flowing from this decision is that the acts were always criminal anyway. Regretfully, the majority overlooks the fact that under our doctrine of respondeat superior an innocent employer can be liable for the acts of his employees. The employer in such a case has not committed

---

decision should have only prospective application. *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982). If we were to speculate, we would probably conclude that most liquor store and tavern liability coverage contains no such exclusion. Aside from speculation, however, we do not consider the question relevant. Defendants should not be heard to complain that they will have to pay from their own pockets damages which result from their violation of statutes which made their conduct criminal.

a criminal act but nevertheless he could be liable in damages.

There seems to be an assumption on the majority's part that liability insurance will take care of any problem in retroactive application of liability. Any concern about the lack or extent of liability insurance to cover this new liability is however relegated to a footnote. Nor is there any consideration given to the probability that existing liability policies were written with premiums based on the former law, but retroactive application of the new ruling increases the loss exposure to an extent not anticipated.

Our sister state New Mexico, when faced with this same problem, found sound reasons to apply the new rule of law prospectively. *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982). In my judgment we should have followed that example.