[Civ. No. 57586. Second Dist., Div. One. Apr. 24, 1980.]

HAROLD TRENIER, JR., Plaintiff and Appellant, v.
CALIFORNIA INVESTMENT AND DEVELOPMENT
CORPORATION et al., Defendants and Respondents.

**COUNSEL**

Keith S. Swift and Douglas L. Young for Plaintiff and Appellant.

Lloyd S. Wolf for Defendants and Respondents.

**OPINION**

**WEISZ, J.***—This case presents directly a straightforward question of law, arising from a dismissal after demurrer sustained without leave to amend.

Appellant, plaintiff below, is a person who alleged in his first cause of action that he went to the Trancas Inn (owned by one of the respondents as a corporation, and alleged to be the alter ego of an individual respondent), where he was served by the bartender, respondent Rice, twenty-seven ounces of straight Jack Daniels Whiskey and four ounces of Tequila in a period less than two hours in duration. In the second cause of action, respondent Pratt is alleged to be a person with authority to control both Rice and a defendant named Gibbs (not involved at this juncture in the proceedings), Gibbs having bought plaintiff at least 12 ounces of alcohol within a 30-minute period, and thereafter bought him another 6 ounces of alcohol before he left the Trancas Inn, all with the knowledge and consent of the others. In two more purported causes of action which effectively incorporate one of the foregoing, it is charged that these actions constitute a violation of a statutory duty in

---

*Assigned by the Chairperson of the Judicial Council.

serving an obviously intoxicated person, willful and wanton misconduct, and (in a completely unexplained fashion) the intentional infliction of mental and emotional distress.

It is alleged that plaintiff, after this remarkably concentrated drinking bout, departed in his automobile on dangerously curved roads, and ran off the road with consequent injury.

Not unmindful of the difficulties inherent in his case, counsel alleged that the bartender *and* the other defendants knew that plaintiff was going to drive his car on dangerously curved highways (see *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144, 152-153 [145 Cal.Rptr. 534, 577 P.2d 669]); for good measure, there is an artfully drawn allegation that the bartender knew plaintiff was an inexperienced drinker, who was unable to realize what he was doing or control his own actions (see *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 402-404 [143 Cal.Rptr. 13, 572 P.2d 1155]). By its judgment, the court below held that no cause of action had been (or could properly be) stated.

Clearly enough, the basis for that holding necessarily has to be that plaintiff has pleaded himself "out of court"; that the allegations indicate a complete defense.

We are thus led along a busy thoroughfare, the traffic on which by appellate courts and the Legislature has vastly increased in recent years—the road of liability for the damage caused by, and to, the drinker. This was a quiet byway, enlivened only by an occasional move toward legislative change, until *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], when the Supreme Court removed the first major roadblock. That case was clear, simple, and direct. Its holding can easily be stated as: (1) the former rule to the effect that voluntary consumption by the drinker was the only proximate cause of any injury, was incorrect and improper as applied to injuries caused a third person by a drunk driver who had been served alcoholic beverages when in an obviously intoxicated condition, since the furnishing of the liquor could be a substantial factor in causing the damage to the third person; (2) that a bartender[1] owes a duty, based on section 25602 of the Business and Professions Code, to protect "members of the general pub-

---

[1]To be sure, bartenders are very likely an impecunious group and a far from worthwhile group as solvent or insured defendants; on the other hand, their employers are reasonably likely to fit a desirable defense category.

lic from injuries...resulting from the excessive use of intoxicating liquor" (*Vesely* v. *Sager, supra,* at p. 165).

Once the roadblock[2] was gone, and the avenue of liability opened to members of the general public injured as a result of a collision with a driver alleged to have been served by a bartender when in an obviously intoxicated condition, others sought its use. In *Coulter* v. *Superior Court, supra,* 21 Cal.3d 144, the scope was expanded to passengers in the drunk driver's automobile, and to place possible liability on a social host or other noncommercial provider of alcohol to an obviously intoxicated driver-to-be, both on statutory duty and common law bases.

The more difficult and interesting area, and the one with which we are here concerned, is the problem of liability on the part of the bartender (Rice) and the apparent noncommercial provider (Gibbs) for injuries caused to the drinking driver himself, as a result of his erratic driving.

In this area, there are actually only two cases, both being wrongful death cases. The first is *Paula* v. *Gagnon* (1978) 81 Cal.App.3d 680 [146 Cal.Rptr. 702]. There decedent went to three taverns, consumed at least enough alcohol to have had a .19 percent blood alcohol reading, and killed himself in a single car accident on his way home. Defendants moved for summary judgment and were successful in the trial court, but fared less well on appeal. The appellate decision was, that the question of obvious intoxication was one of fact, as was the question of willful misconduct. Indeed, that court stated that "[b]ecause we have concluded that in the *present procedural situation* the *complaint* does not reveal willful misconduct as a matter of law, we need not decide whether such a showing would bar recovery by appellants." (*Paula* v. *Gagnon, supra,* 81 Cal.App.3d at p. 685; italics added.)

In *Sissle* v. *Stefenoni* (1979) 88 Cal.App.3d 633 [152 Cal.Rptr. 56], that very question was presented, and a judgment of dismissal like one in the instant case (after general demurrer sustained without leave to amend) was affirmed by a different division of the same appellate court. There, as here, it was alleged that the drinking driver-to-be was served alcohol in a bar while already obviously intoxicated, and that the

---

[2]The roadblock has now been newly erected by the Legislature. Amendments in 1979 to Business and Professions Code section 25602 and Civil Code section 1714 literally seek to overrule *Vesely* v. *Sager* and its successors. The incident here in issue began in 1977, and constitutes old traffic.

bar personnel knew he would leave there and drive his car. He did get in his car while intoxicated, drove on the wrong side of a highway, and was killed in an automobile accident. The court held that these allegations ultimately alleged that the decedent had violated sections 23102, subdivision (a) and 21650 of the Vehicle Code (drunk driving and driving on the wrong side of the highway). "These actions were necessarily in disregard of the rights and safety of others. Decedent was guilty of willful misconduct barring the present action." (*Sissle v. Stefenoni, supra*, at p. 636.)

■ Thus, unless the facts are essentially distinguishable or the *Sissle* case is clearly wrong, we ought to follow that authority.

The cases are far from distinguishable. Plaintiff here alleges that he was not only obviously intoxicated, but that it was known that he intended to drive in an intoxicated condition upon roads containing dangerous curves, which he did, and became involved in a single car accident (apparently a euphemism for a statement that he ran off the road). Thus, the driving under the influence is alleged. Though undoubtedly more makeweight than anything else, one can discern a plethora of lesser Vehicle Code violations murkily delineated through the pleading, including such familiar standbys as Vehicle Code sections 22350 (driving at greater than a prudent speed), 23103 (driving with wilful[3] or wanton disregard for the safety of persons or property), and perhaps such lesser ones as 21650 (driving other than on the right half of the roadway), 21662 (driving on mountain highways as near to the right edge as possible) or others even more remote. Indeed, it is almost a ridiculous truism that it would be almost impossible to run off the road without violating one or more of the rules of the road, unless it was a violation excused by reason of the acts, or an emergency situation created by the acts, of others. *Sissle* is, for present purposes, on all fours with this case.

Ultimately, appellant undertakes to avoid the effect of *Sissle* by nimbly leaping from one to another contention: that *Sissle* is indeed wrong, and that as an inexperienced drinker, his situation differs from that of Mr. Sissle. We disagree.

---

[3]The cases utilize the spelling "willful"; the Legislature apparently prefers "wilful." In the spirit of compromise, we use the spelling most closely applicable, based on subject matter.

Both contentions are bottomed on a misreliance on the case of *Ewing* v. *Cloverleaf Bowl, supra*, 20 Cal.3d 389. In that case, and very tragically, the plaintiff's decedent had determined to celebrate his 21st birthday and his concomitant right to order alcoholic beverages in a public place by becoming quickly and thoroughly drunk in the bar of a local bowling alley. The young man began with a vodka collins "on the house," but in his anxiety for inebriety stepped up the pace to 151 proof rum, of which he consumed at least 10 overfilled shot glasses. He died, having an alcohol level of .47 percent, after passing out in the bar. He did not drive; there was no car involved. Under those circumstances, the Supreme Court held that a question was presented for jury determination as to whether the behavior of both the decedent and the bartender should be characterized as negligent or willful misconduct, and affirmed that the proximate causation of the death was not one where, as a matter of law, only consumption (rather than a combination of consumption and sale) could be deemed the sole cause.

In this case, unlike *Ewing* and very like *Sissle*, a very marked difference appears. Appellant here did not remain in the bar and suffer injury; rather, he undertook to go to his car, to undertake to drive, and to continue to drive even upon roads with dangerous curves when he was clearly in no condition to do so and created a very potent and lethal threat not only to his own safety, but also to the safety of any others who might be so unfortunate as to be in the area as he drove in his befuddled state. As in *Sissle*, appellant has pleaded himself into the position of one who is guilty of willful misconduct; again as in that case, we must distinguish *Paula* v. *Gagnon* on its facts and its procedural situation, and to question the holding itself to some degree.

The factual/legal contention advanced by appellant seeks to dress the ravening wolf in the hide of a sheep in order to stand more directly in the *Ewing* lane: he seeks to argue that since he alleges that he was an "inexperienced" drinker, he grew unable to exercise control almost immediately, such that he might have become intoxicated negligently, but cannot be regarded as guilty of willful misconduct by reason of the fact that he became so quickly intoxicated and thus unable to recognize the dangers involved in driving the car or imbibing such prodigious quantities of liquor in a short period of time. In *Ewing*, the fact of the decedent's youth was certainly deemed to be of some importance, but it was this youth or inexperience which was weighed against the background and knowledge of the bartender *in respect of the possibility* of *acute alcohol poisoning* that was there involved. Not everyone, young

or old, experienced as a toper or a relative novice in the area of drinking, has special knowledge of this medical question relating to the effects of huge amounts of alcohol on his own life-system.[4] On the other hand, it is hardly necessary to seek out expert opinion on what will happen if one ingests as alleged in this complaint, "grossly excessive amounts of alcohol, to wit, 27 ounces of straight Jack Daniels Whiskey and four ounces of Tequilla within a period of less than two hours." To drink alcohol in such quantity and at such speed involves dangers known to anyone, young or old, and to seek to drive an automobile immediately thereafter, even on nontreacherous roads, involves such peril to the lives and safety of others as to constitute willful misconduct. Thus, whether we deal with the bartender, the social host, or those with a supposed right to control either or both of them, recovery is barred.

## DISPOSITION

The order is affirmed.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied May 20, 1980.

---

[4]In this footnote, we ought refer to a pertinent footnote in *Ewing, supra,* 20 Cal.3d at page 404, where the court planted the seed from which appellant seeks to pluck fruit. At footnote 10, the court hypothesized that a drinker might have decided to get drunk, but could have taken steps to protect himself and others from any danger as a result, thereby enabling a fact finder to conclude that he was negligent in becoming intoxicated, but not chargeable with willful misconduct. It disapproved a case to the extent that it held that a patron always and necessarily commits willful misconduct in consuming liquor to the point of intoxication, but did so in the context of a case which did not involve any driving. It is, therefore, not a holding that willful misconduct is a question of fact in such a fact situation.