Doris LYONS, Petitioner,

v.

Donald NASBY, d/b/a Cripple Creek Inn, Respondent.

No. 87SC387.

Supreme Court of Colorado,
En Banc.

March 20, 1989.

Barash & LeHouillier, Steven T. Nolan, Colorado Springs, for petitioner.

Zarlengo, Mott, Zarlengo & Winbourn, Michelle Holland, Denver, for respondent.

ERICKSON, Justice.

I.

Plaintiff–Petitioner Doris Lyons appeals from the decision in *Lyons v. Nasby*, 748 P.2d 1341 (Colo.App.1987), dismissing her claim which sought recovery under section 13–21–202, 6 C.R.S.1973 (Wrongful Death Act),[1] for the death of her son Timothy Lyons. Because her claim is brought under the wrongful death statute, the petitioner can maintain an action only if her son could have done so, had his injuries not proven fatal. *Mangus v. Miller*, 35 Colo. App. 335, 535 P.2d 219 (1975). The com-

---

1. Section 13–21–202 provides that:

    When the death of a person is caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensued, shall be liable in an action for damages notwithstanding the death of the party injured.

plaint alleges that on or about August 13, 1983, agents or employees of the respondent, Donald Nasby, d/b/a the Cripple Creek Inn, negligently served fermented and alcoholic beverages to Timothy even though he was visibly intoxicated at the time. It is further alleged that due to the respondent's negligence, Timothy, while intoxicated, drove his automobile off a mountain road and suffered fatal injuries.

The petitioner does not assert a claim under Colorado's Dram Shop Act, section 13–21–103, 6A C.R.S. (1987).[2] Rather, she predicates her claim upon the common-law theories of negligence and negligence per se. As support for her negligence per se claim, the petitioner alleges that respondent violated section 12–46–112, 5 C.R.S. (1973) (Beer Code) and section 12–47–128, 5 C.R.S. (1973) (Liquor Code), which provide that it is unlawful to sell beer or liquor to visibly intoxicated persons. §§ 12–46–112(1)(b)(I) & 12–47–128(1)(a).[3]

At trial, the respondent moved to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* C.R.C.P. 12(b). The trial court granted the motion, concluding that a tavern owner owes no duty to an intoxicated person. Rather, one who drinks to the point of intoxication "must assume the burden of injury to himself or his property." The trial court reasoned that a contrary ruling would open the floodgates of litigation and create an unmanageable quantity of litigation.

The court of appeals affirmed the trial court's judgment, concluding that no duty extended from a liquor vendor to an inebriate. The court of appeals based its conclusion on the rule that harm to a drinker is proximately caused by the consumption rather than the sale of the alcohol. Thus the respondent's act of serving the decedent was not the proximate cause of the patron's injuries, and consequently the respondent was not negligent. In *Largo Corp. v. Crespin*, 727 P.2d 1098 (Colo. 1986), we expressly rejected the proximate cause rule relied upon by the court of appeals as "out-dated and ill-reasoned" in reaching the conclusion that a third party injured by an inebriate can, under certain circumstances, sue a tavern owner. *Id.* at 1103. We also stated that under a traditional tort law analysis, a liquor vendor may, again depending upon the circumstances, owe third parties a duty to refrain from serving visibly intoxicated patrons.

In the case now before us, the court of appeals did not follow the *Crespin* guidelines in reaching its decision. Its failure to do so requires us to reverse the court of appeals decision. In our view, *Crespin* permits the intoxicated person to pursue a claim against a tavern owner under common-law theories of negligence and negligence per se. Similarly, under Colorado law, the tavern owner can assert a contrib-

**2.** Section 13–21–103 provides that

Every husband, wife, child, parent, guardian, employer, or other person who is injured in person, or property, or means of support by any intoxicated person, or in consequence of the intoxication of any person, has a right of action, in his name, against any person who, by selling or giving away intoxicating liquors to any habitual drunkard, causes the intoxication, in whole or in part, of such habitual drunkard; and all damages recovered by a minor under this section shall be paid either to the minor or to his parent, guardian, or next friend, as the court directs. The unlawful sale or giving away of intoxicating liquors works a forfeiture of all rights of the lessee or tenant under any lease or contract of rent upon the premises. No liability shall accrue against any such person as provided unless the husband, wife, child, parent, guardian, or employer first, by written or printed notice, has notified such person, or his agents or employees, not to sell or give away any intoxicating liquors to any habitual drunkard.

**3.** Section 12–46–112(1)(b)(I) provides in part that it is unlawful for any person:

To sell, serve, give away, dispose of, exchange, or deliver, or to permit the sale, serving, giving, or procuring of any fermented malt beverage ... to or for any person under the age of eighteen years, to a visibly intoxicated person, or to a known habitual drunkard....

Section 12–47–128(1)(a) provides that it is unlawful for any person:

To sell, serve, give away, dispose of, exchange, or deliver or permit the sale, serving, giving, or procuring of any malt, vinous, or spiritous liquor to or for any person under the age of twenty-one years, to a visibly intoxicated person, or to a known habitual drunkard.

utory negligence defense against the patron.

Accordingly, we reverse the court of appeals decision and remand to the trial court for further proceedings consistent with this opinion.

## II.

We preface this opinion by noting that subsequent to this claim's accrual on or about August 13, 1983, the General Assembly severely limited tavern owners' liability to their customers. In 1985, the legislature amended section 12–46–112 of the Beer Code and section 12–47–128 of the Liquor Code to provide retail sellers of alcoholic beverages with a good faith defense to civil actions under certain circumstances. *See* §§ 12–46–112(1)(b)(III), 12–47–128(5)(a)(IV), 5 C.R.S. (1985).[4] The amendments became effective on July 1, 1985, and apply to acts committed on or after that date. Ch. 114, sec. 5, § 12–47–130, 1985 Colo.Sess.Laws 540, 544. In 1986, the General Assembly again addressed the civil liability of tavern owners. The 1986 amendments make dramshop liability strictly a creature of statute in Colorado. Under the new laws, "[n]o civil action may be brought ... by the person to whom the alcoholic beverage was sold or served or by his estate, legal guardian, or dependent." § 12–47–128.5(3)(b), 5 C.R.S. (1988 Supp). The 1986 amendments went into effect on May 3, 1986, and apply to claims which accrue on or after that date. Ch. 100, § 12–47–128.5, 1986 Colo.Sess.Laws 659. Because the petitioner's claim accrued on or about August 13, 1983, the 1985 and 1986 amendments do not apply. *See* § 2–4–202, 1B C.R.S. (1980) (statutes are presumed to operate prospectively); *Exotic Coins, Inc. v. Beacom,* 699 P.2d 930 (Colo.) (same), *appeal dismissed,* 474 U.S. 892, 106 S.Ct. 214, 88 L.Ed.2d 214 (1985).

## III.

■ Respondent argues that notwithstanding the legislative amendments' inapplicability, the petitioner's claims are barred by common-law principles and precedent, and that even if such claims were recognized, the Colorado Dramshop Act preempts them. The preemption argument is without merit. In *Largo Corp. v. Crespin,* 727 P.2d 1098 (Colo.1986), we held that the dramshop act neither expressly nor impliedly "preempt[s] the field of civil liability or provide[s] the exclusive remedy against vendors of alcoholic beverages." *Id.* at 1107. We reached this conclusion because, based upon our reading of the dramshop act's legislative history, the purpose of the act was to deter intemperance rather than provide a mechanism for civil relief. As such, we stated that the General Assembly did not intend that the dramshop act preempt common-law theories of civil liability. *Id.* at 1105. We reaffirm our conclusion in *Crespin* by now holding that petitioner's common-law negligence and negligence per se claims are not preempted by the dramshop act. *See id.*

At common law neither an inebriate nor a third party injured by an inebriate had a cause of action against the dispenser of the alcoholic beverage. *See, e.g., Megge v. United States,* 344 F.2d 31, 32 (6th Cir.), *cert. denied,* 382 U.S. 831, 86 S.Ct. 69, 15 L.Ed.2d 74 (1965); *Nolan v. Morelli,* 154 Conn. 432, 436, 226 A.2d 383, 386 (1967). Many inroads have been made into this traditional rule, particularly along the lines of third party recovery. *See, e.g., Crespin,* 727 P.2d 1098; *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983); *Ono v. Applegate,* 62 Haw. 131, 612 P.2d 533 (1980); *Klingerman v. SOL Corp. of Maine,* 505 A.2d 474 (Me.1986). As explained in a dissenting opinion, recovery

---

**4.** Section 12–46–112(1)(b)(III) provides that:

Any licensee or his employee acting in good faith in accordance with the provisions of this paragraph (b) shall be immune from any liability, civil or criminal; except that a licensee or employee acting willfully or wantonly shall not be immune from liability pursuant to this paragraph (b).

Section 12–47–128(5)(a)(IV) provides that:

Any licensee or his employee acting in good faith in accordance with the provisions of this paragraph (a) shall be immune from any liability, civil or criminal; except that a licensee or employee acting willfully or wantonly shall not be immune from liability pursuant to this paragraph (a).

has become increasingly favored because of "the shift from commingling alcohol and horses to commingling alcohol and horsepower," and the increasing severity and number of injuries which are the direct result of the shift. *Garcia v. Hargrove,* 46 Wis.2d 724, 737, 176 N.W.2d 566, 572 (1970) (Hallows, C.J., dissenting), *overruled by Sorensen v. Jarvis,* 119 Wis.2d 627, 350 N.W.2d 108 (1984).

Petitioner urges us to extend the modern trend of allowing recovery by applying *Crespin* in such a manner as to allow an injured inebriate, or his estate, to sue a tavern owner. Respondent argues that *Crespin* is inapplicable since it involved a third-party, rather than a first-party, claim. While *Crespin* is distinguishable from the case now before us, it does provide the appropriate analytical framework in which petitioner's claims should be reviewed.

## A. NEGLIGENCE

To state a prima facie case of negligence, a plaintiff must establish that the defendant owed plaintiff a duty which was breached and the breach of that duty proximately caused the plaintiff's injury. *Leake v. Cain,* 720 P.2d 152, 155 (Colo.1986). Those courts that have refused to recognize an inebriate's right to pursue a negligence claim have typically done so on one of two grounds: the lack of a tavern owner's duty, as a matter of public policy, to one who is voluntarily drunk; or the lack of a proximate cause between the serving of the alcohol and the injury producing event. We have rejected both of these arguments in the context of third-party claims. *See Crespin,* 727 P.2d at 1102, 1104. Applying the *Crespin* analysis to a first-party claim, we conclude that prior to the 1985 and 1986 statutory amendments, a dispenser of alcohol was under a duty not to serve a visibly intoxicated person, that the dispenser's violation of this duty could be a proximate cause of the inebriate's injury, and that the inebriate or his estate could bring a claim against the dispenser for negligence.

### 1. *Duty*

▪▪▪ A person has a duty to act or refrain from acting when it is reasonably foreseeable that the failure to act or refrain will create an unreasonable risk of harm to another. *Leake,* 720 P.2d at 160; *Metropolitan Gas Repair Serv., Inc. v. Kulik,* 621 P.2d 313, 317 (Colo.1980). The existence of a duty is a question of law to be determined by the court. *Crespin,* 727 P.2d at 1102; *Smith v. City & County of Denver,* 726 P.2d 1125 (Colo.1986). In determining whether the law should impose a duty the court must consider several factors, including the extent, foreseeability and likelihood of injury, the social utility of the defendant's conduct, the magnitude of the burden placed on the defendant to guard against injury, and the consequences of placing that burden on the defendant. *Smith,* 726 P.2d at 1127.

▪▪▪ We have stated before that a reasonable person would foresee that an inebriate will act without prudence, control, or self-restraint. *Crespin,* 727 P.2d at 1102. The lack of control, when coupled with the obvious possibility that the inebriate might attempt to drive an automobile, creates a foreseeable risk that the inebriate will suffer severe injury. The frequently raised argument that a tavern owner cannot foresee that an intoxicated patron will attempt to drive is untenable in light of the reality that travel by automobile is both "commonplace and necessary in today's society." *Id.* In *Crespin* we concluded that "[b]alancing the foreseeability, likelihood and extent of the probable injury against any conceivable 'utility' of serving an intoxicated person more alcohol than he or she can safely consume," a tavern owner owes a duty to third persons to act with reasonable care in dispensing alcoholic beverages to its patrons. *Id.*

We see no reason why this conclusion should not be extended to patrons as well as to third parties. If the factors enumerated in *Smith* indicate that a duty is owed, the status of the party as a consumer rather than a third party should not, as a matter of law, preclude the recognition of a duty. Courts that have refused to recog-

nize such a duty usually base their decision on public policy considerations. *See, e.g., Kindt v. Kaufman,* 57 Cal.App.3d 845, 855–56, 129 Cal.Rptr. 603, 610–12 (1976); *Wright v. Moffitt,* 437 A.2d 554, 556 (Del. Super.1981); *Swartz v. Huffmaster Alarm Sys., Inc.,* 145 Mich.App. 431, 436, 377 N.W.2d 393, 396 (1985); *Allen v. County of Westchester,* 109 A.D.2d 475, 480, 492 N.Y. S.2d 772, 776 (1985). A frequently cited example of the public policy concern is contained in *Kindt v. Kaufman,* 57 Cal. App.3d 845, 129 Cal.Rptr. 603, where the court stated that:

> The inestimable gift of reason and self-control cries out for preservation in every person, and the duty of its preservation devolves upon each member of the public. When the restraint of reason and the ability to care for one's self are perverted by a conscious, self-indulgent act of voluntary intoxication which temporarily casts off those powers, no societal or personal wrong, nor violation of public or social policy is accomplished or violated if the actor is alone held answerable for his injury.... Governmental paternalism protecting people from their own conscious folly fosters individual irresponsibility and is normally to be discouraged.... To go yet another step and allow monetary recovery to one who knowingly becomes intoxicated and thereby injures himself is in our view morally indefensible.

*Id.* at 855–56, 129 Cal.Rptr. 603, 610.

We agree that voluntary intoxication is a self-indulgent act. We also note that a person who voluntarily consumes alcohol to the point of intoxication is at the very least partially responsible for his injuries. However, the fact that the patron has acted in an unacceptable manner should in no way lessen the equally unacceptable conduct of a tavern owner. One who stands behind a bar and serves drink after drink to a visibly intoxicated customer engages in behavior which is as opprobrious as that of the customer. We think it "morally indefensible" to condone the conduct of a tavern owner who, so long as the patron is able to pay, continues to serve the intoxicated patron a steady stream of alcohol. In our view the conduct of both the patron and the tavern owner is reprehensible and should be discouraged. Insulating tavern owners, as a matter of law, from liability does not send the message that they, as well as their patrons, must be accountable for their actions.

Our framework for analyzing negligence claims will not casually and cavalierly be cast aside every time we disapprove of the plaintiff's conduct. Rather, we endeavor to apply conventional tort law principles to this issue in the same manner that they are generally applied. While we may frown upon the fact that the decedent had imbibed to and past the point of intoxication, our disapproval cannot be the basis, as a matter of law, for insulating tavern owners from the results of their misconduct. The appropriate mechanism for registering disapproval of the decedent's behavior lies in Colorado's comparative negligence statute, which requires the jury to assess the parties' relative degrees of fault when determining liability. *See* § 13–21–111, 6A C.R. S. (1987). We believe in the effectiveness of this statute, and will not usurp the jury's role in determining whether the plaintiff's misconduct, when compared to that of the defendant, was so great as to preclude recovery.

In our view, the proper analysis to apply in the present case is the pre-existing law concerning a tavern owner's duty to its customers. We have already stated that a reasonable person can foresee that an intoxicated patron will suffer injury, and that there is little or no social utility in providing an intoxicated person with more alcohol than he or she can safely consume. The remaining factors to be considered include the magnitude of the burden and the consequences of imposing a duty on a tavern owner. The magnitude of the burden placed upon the respondent to guard against the type of injury involved here is not, in our view, so great as to bar the imposition of a duty. By imposing a duty, we merely require that the tavern owner determine whether a patron who requested a drink was intoxicated. Tavern owners frequently argue that they are unable to

ascertain whether a patron is intoxicated, and thus cannot ever know if they are breaching their duty to the patron. *See Crespin,* 727 P.2d at 1102. We rejected this argument in *Crespin,* where we noted that the General Assembly must have concluded that it was possible for tavern owners to determine whether a patron was intoxicated. Otherwise, sections 12–46–112 and 12–47–128, which in part make it illegal to sell alcoholic beverages to "visibly intoxicated" persons, would be meaningless. We point out that sections 12–46–112 and 12–47–128 require the tavern owner to ascertain whether a patron is "visibly intoxicated" rather than "legally intoxicated." [5] While it might well be an impossible task for a tavern owner to tell if a patron is "legally intoxicated," a tavern owner can, in the exercise of reasonable judgment, determine whether a patron is "visibly intoxicated."

We must finally consider the consequences of imposing a duty upon the respondent. The argument made by the respondent is that the consequences of allowing an inebriate to state a claim would violate public policy and open the floodgates of litigation. We have already rejected the former argument. We are unpersuaded by the latter. As noted earlier, the General Assembly enacted legislation in 1985 and 1986 which effectively precludes a patron from suing a tavern owner. *See* §§ 12–46–112(1)(b), 12–47–128(1)(a), 5 C.R. S. (1985); § 12–47–128.5(3)(b), 5 C.R.S. (1988 Supp.). Thus the only cases which could pass through the floodgates are those which accrued prior to the statutory amendments and which are still within the applicable statute of limitations. We do not foresee this amounting to a flood of litigation. The consequence of imposing a duty in this case is to require the tavern owners to shoulder their share of the responsibility for their unacceptable actions. We do not impose strict liability on the owners. *See Smith v. Home Light & Power Co.,* 734 P.2d 1051 (Colo.1987). They are liable only if the plaintiff can prove that they acted in a manner that was unreasonable under the circumstances. *Crespin,* 727 P.2d at 1102.

It is our belief that under a traditional tort law analysis, the imposition of a duty in this case is both appropriate and required. *See Smith v. City & County of Denver,* 726 P.2d 1125. Accordingly, we hold that a tavern owner owes an intoxicated patron a duty of care not to serve that person alcohol.

### 2. *Proximate Cause*

A defendant is not negligent if his or her act was not a proximate cause of the plaintiff's injury. *Leake v. Cain,* 720 P.2d 152 (Colo.1986). A defendant proximately causes an injury when his or her wrongful conduct is a substantial factor in bringing about the plaintiff's injury. *Ekberg v. Greene,* 196 Colo. 494, 588 P.2d 375 (1978). Whether proximate cause exists is a question for the jury and only in the clearest of cases, where reasonable minds can draw but one inference from the evidence, does the question become one of law to be determined by the court. *Samuelson v. Chutich,* 187 Colo. 155, 529 P.2d 631 (1974). In *Largo Corp. v. Crespin,* 727 P.2d 1098, we rejected the traditional common-law rule which held that there was no causal relation between the sale of alcohol and injury to a third party. We reasoned that "[f]urnishing an alcoholic beverage to an intoxicated person is a proximate cause 'because the consumption, resulting intoxication, and the injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the haz-

---

**5.** While there are no statutory provisions delineating when a person is "intoxicated," a person is considered to be "impaired" for the purposes of motor vehicle operation if his or her blood contains more than 0.05 but less than 0.10 grams of alcohol per one hundred milliliters of blood. § 42–4–1202(2)(b), 17 C.R.S. (1988 Supp.). Likewise, a person is considered to be "under the influence" for the same purposes if his or her blood contains 0.10 or more grams of alcohol per one hundred milliliters of blood. § 42–4–1202(2)(c), 17 C.R.S. (1988 Supp.).

We would not expect tavern owners to be able to determine whether a patron was either "impaired" or "under the influence" as defined by statute. We cannot, however, say the same with regard to "visible intoxication."

ards which makes such furnishing negligent.'" *Id.* at 1103. (quoting from *Vesely v. Sager*, 5 Cal.3d 153, 164, 486 P.2d 151, 159, 95 Cal.Rptr. 623, 631 (1971)). The rationale for rejecting the traditional rule of no proximate cause is even stronger here than it was in *Crespin*. In *Crespin* there were three persons, the liquor dispenser, the patron, and the injured third party in the causal chain which lead to the injury. In the present case there are only two: the tavern owner and the injured patron. Since there are only two parties here, the superseding cause problem present in *Crespin* is not present here.

■ While the chain of causation in some cases may be so attenuated that no proximate cause exists as a matter of law, such is not the case here. The complaint before us alleges that on August 13, 1983, agents or employees of the respondent served alcoholic beverages to the decedent even though he was visibly drunk at the time. The petitioner asserts that due to this misconduct, the decedent, while attempting to drive home, drove off a mountain road and suffered fatal injuries. Under these allegations, we believe that a jury could reasonably find that the respondent's behavior would likely result in the decedent incurring severe injury and that the behavior was a substantial factor in causing the injuries suffered. For the same reason that a tavern owner owes a duty not to serve intoxicated patrons, we cannot say as a matter of law that an experienced vendor of alcohol such as the respondent could not foresee that his conduct would result in the decedent incurring injury. *Crespin*, 727 P.2d at 1103. In our view, a tavern owner's act of serving an intoxicated patron alcohol may well be a proximate cause of any injuries the patron subsequently incurs. Accordingly, the issue of proximate cause in this case should not be determined as a matter of law, but should be submitted to the jury for its determination. *See Samuelson*, 187 Colo. 155, 529 P.2d 631.

We conclude that the respondent had a duty to the decedent, and that a jury could find that the respondent's breach of that duty was a proximate cause of the decedent's injuries. As such, the petitioner has stated a claim for common-law negligence which is sufficient to withstand respondent's motion to dismiss for failure to state a claim.

## B. NEGLIGENCE PER SE

■ In Colorado the violation of an ordinance adopted for the public's safety may be negligence per se if it is established that the violation proximately caused the injury. *See Lambotte v. Payton*, 147 Colo. 207, 363 P.2d 167 (1961); *Hertz Driv–Ur–Self System, Inc. v. Hendrickson*, 109 Colo. 1, 121 P.2d 483 (1942). The plaintiff must also show that he or she is a member of the class of persons whom the statute was intended to protect and that the injuries suffered were of the kind that the statute was enacted to prevent. *Crespin*, 727 P.2d at 1108; *Dunbar v. Olivieri*, 97 Colo. 381, 50 P.2d 64 (1935). Respondent argues that this last requirement prevents any finding of negligence per se.

Petitioner asserts that the respondent violated sections 12–46–112, 5 C.R.S. (1973), and 12–47–128, 5 C.R.S. (1973),[6] by serving decedent alcoholic beverages when he was visibly intoxicated. Section 12–46–112 of the Beer Code provides that it is illegal to sell fermented beverages to those who are visibly intoxicated, while section 12–47–128 of the Liquor Code provides the same with regard to fermented, vinous, or spiritous liquor. Respondent argues that sections 12–46–112 and 12–47–128 were designed to protect all members of the general public other than the drinker and thus cannot form the basis for a drinker's negligence per se claim. We rejected a similar argument in *Crespin*. There we held that although the legislative declaration of the Liquor Code did not mention as its purpose the protection of third parties, one purpose was nevertheless the public's protection, of which third parties were members. We also stated that since a purpose of the Liquor Code was to protect "the economic and social welfare and the health, peace

6. *See supra* note 3.

and morals of the people," section 12–47–128 was undoubtedly designed in part to prevent injury to tavern patrons as well as to the general public. *Crespin*, 727 P.2d at 1108. Likewise, in *New Safari Lounge, Inc. v. City of Colorado Springs*, 193 Colo. 428, 567 P.2d 372 (1977), we held that a purpose of the Liquor Code was to protect the public's safety and, since the code did not single out patrons as being a class outside of the public, patrons were implicitly included within the protected class.

■ Our conclusion that patrons fall within the class of persons sections 12–46–112 and 12–47–128 were designed to protect is bolstered by the fact that section 12–47–128 "unquestionably reflects a legislative concern for the clear dangers surrounding the sale or provision to those who cannot safely consume it—*intoxicated persons*, minors, and habitual drunkards." *Crespin*, 727 P.2d at 1108 (emphasis added). It is clear that furnishing alcohol to intoxicated patrons presents a risk not only to persons with whom the patron comes in contact, but also to the patron himself. As such, we hold that section 12–47–128, and its analogous counterpart, section 12–46–112, were designed in part to protect the decedent from the type of fatal injury he suffered as a result of the respondent's alleged violation of the statute. Other jurisdictions with similar statutes have held likewise. *See, e.g., O'Hanley v. Ninety-Nine, Inc.*, 12 Mass.App. 64, 421 N.E.2d 1217, 1219–20 (1981); *Majors v. Brodhead Hotel*, 416 Pa. 265, 267, 205 A.2d 873, 875 (1965).

The respondent's violation of the statute, if proved, is conclusive evidence of negligence per se. *See Crespin*, at 1109; *Reed v. Barlow*, 153 Colo. 451, 386 P.2d 979 (1963); CJI–Civ.2d 9:14; *see also Nazareno v. Urie*, 638 P.2d 671, 675–76 (Alaska 1981), *overruled on other grounds, Kavorkian v. Tommy's Elbow Room, Inc.*, 711 P.2d 521 (Alaska 1985); *Brannigan v. Raybuck*, 136 Ariz. 513, 517, 667 P.2d 213, 217 (1984) (violation of statute is negligence per se unless excused when, for example, "defendant was unable after reasonable diligence to comply with [the statute]"); *Wright v. Moffit*, 437 A.2d 554, 557 (Del.Super.1981); *Miller v. City of Portland*, 288 Or. 271, 273–74, 604 P.2d 1261, 1264–65 (1980); *Majors v. Brodhead Hotel*, 416 Pa. 265, 267–68, 205 A.2d 873, 875–76; W. Prosser, D. Dobbs, R. Keeton, D. Owen, *Prosser & Keeton on Torts* 229–30 (5th ed. 1984). We note, however, that the respondent's alleged violation of sections 12–46–112 and 12–47–128, if proved, would not preclude him from asserting a contributory negligence defense. *See Thomas v. Pete's Satire, Inc.*, 717 P.2d 509, 510 (Colo.App.1985); *see also Ewing v. Cloverleaf Bowl*, 20 Cal.3d 389, 402, 572 P.2d 1155, 1160, 143 Cal.Rptr. 13, 19 (1978).

## C. CONTRIBUTORY NEGLIGENCE

The next issue which must be addressed is what role, if any, Colorado's comparative negligence statute plays in this dispute. Section 13–21–111, 6A C.R.S. (1987),[7] which went into effect on July 1, 1977, abrogated the traditional contributory negligence doc-

---

7. Section 13–21–111, 6A C.R.S. (1987), provides:
   (1) Contributory negligence shall not bar recovery in any action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is made.
   (2) In any action to which subsection (1) of this section applies, the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict which shall state:

   (a) The amount of the damages which would have been recoverable if there had been no contributory negligence; and
   (b) The degree of negligence of each party, expressed as a percentage.
   (3) Upon the making of the finding of fact or the return of a special verdict, as is required by subsection (2) of this section, the court shall reduce the amount of the verdict in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is made; but, if the said proportion is equal to or greater than the negligence of the person against whom recovery is sought, then, in such event, the court shall enter a judgment for the defendant.

trine and in its place substituted a comparative negligence statute. Where the old statute barred a plaintiff from recovering if he or she were at all negligent, the comparative negligence statute permits a plaintiff to recover so long as his or her negligence was less than that of the defendant. § 13–21–111(1); *see also Graf v. Tracy,* 194 Colo. 1, 568 P.2d 467 (1977); *Heafer v. Denver–Boulder Bus Co.,* 176 Colo. 157, 489 P.2d 315 (1971). Under the comparative negligence statute the relative degrees of the plaintiff's and defendant's fault must be ascertained to determine whether and what amount of recovery is proper.

Some jurisdictions have held that a defendant who is negligent per se cannot avail him or herself of the contributory/comparative negligence defense. *See, e.g., Galvin v. Jennings,* 289 F.2d 15, 19 (3d Cir.1961); *Soronen v. Olde Milford Inn, Inc.,* 46 N.J. 582, 589, 218 A.2d 630, 634 (1966). The rationale for this holding is that a tavern owner's duty not to serve intoxicated patrons would be rendered meaningless if the tavern owner could avoid or lessen its responsibility for the breach of that duty by simply accusing the patron of drinking too much.

Other jurisdictions have rejected any rule that precludes a defendant from asserting the contributory/comparative negligence defense. The reasoning here is that the common-law doctrine of negligence per se should not be applied in such a manner to abrogate the legislatively imposed requirement that a jury determine the degree of negligence attributable to the plaintiff and defendant. *See Bissett v. D.M.I., Inc.,* 220 Mont. 153, 717 P.2d 545, 547 (1986); *see also Brannigan v. Raybuck,* 136 Ariz. 513, 518, 667 P.2d 213, 218 (1983) (implicitly recognizing that comparative negligence is available as a defense).

Colorado has cast its lot with the latter jurisdictions. In *McCormick v. United States,* 539 F.Supp. 1179 (D.Colo.1982), a plaintiff who was injured when a postal service employee ran a red light and struck the plaintiff's automobile sued the government under a theory of respondeat superior. The plaintiff claimed that the employee was negligent, and as proof of that claim asserted that running the red light violated Colorado's statutory traffic provisions and thus rendered the defendant negligent per se. The federal district court agreed, but noted that although the defendant may be negligent per se, Colorado's comparative negligence statute nevertheless required the court to "apportion the parties' relative fault in determining the applicable recovery." *Id.* at 1182. This was so "even if the defendant has violated a penal statute and is himself negligent as a matter of law. *See* C.R.S. section 13–21–111(1) (1973)." [8] *Id.*

In our view, allowing a tavern owner to assert the comparative negligence defense best comports with the purpose of section 13–21–111. To preclude a defendant from asserting this defense would be a statement by us that a defendant's violation of a statute such as the one involved here is, as a matter of law, the proximate cause of the plaintiff's injuries. The defendant would be foreclosed from showing that his violation did not contribute to the plaintiff's injuries or, conversely, that the plaintiff's negligence was greater than that of the defendant. Such a holding would clearly be contrary to traditional tort principles, namely that there be fault on the defendant's part and this fault contribute to the plaintiff's injuries. *E.g., Majors v. Brodhead Hotel,* 416 Pa. 265, 271, 205 A.2d 873, 877 (1965). We will not violate this most basic of tort principles. Accordingly, we hold that the respondent may assert the comparative negligence defense.

We also note that the degree of the parties' fault here is to be determined by

---

8. A penal statute is usually defined as a statute which, when violated, imposes a penalty. *See W.T. Grant Co. v. Casady,* 117 Colo. 405, 188 P.2d 881 (1948); *City & County of Denver v. School Dist. No. 1,* 94 Colo. 406, 30 P.2d 866 (1934). Sections 12–46–112 and 12–47–128 are therefore penal statutes inasmuch as they provide that it is "unlawful" to provide intoxicated persons with alcohol and that any person who violates the sections may have their liquor license suspended or revoked.

the trier of fact. Only in the clearest of cases where the facts are undisputed and reasonable minds can draw but one inference should relative degrees of fault be determined as a matter of law. *University of Denver v. Whitlock*, 744 P.2d 54 (Colo. 1987). Absent this degree of clarity, the issue of comparative negligence should be submitted to the jury. The case before us lacks that degree of clarity which would allow the comparative negligence issue to be decided as a matter of law. The respondent's assertion that the decedent voluntarily and intentionally imbibed to and past the point of intoxication, when coupled with the petitioner's allegation that the respondent continued to serve her son even though visibly drunk, illustrate that there are disputed facts here. Accordingly, the determination of the relative degrees of the parties' fault must be made by the jury. *See id.*

### IV.

In sum, we hold that prior to the 1985 and 1986 statutory amendments, a tavern owner owed intoxicated patrons a duty not to serve them alcohol. We also find that a jury could determine that a breach of this duty was a proximate cause of the type of injuries suffered by the decedent. Moreover, if it ascertained that the respondent violated sections 12–46–112 and 12–47–128, and the violation proximately caused the decedent's injuries, the respondent was negligent per se. The respondent may assert the defense of comparative negligence.

Accordingly, we reverse the court of appeals decision and remand to the trial court for further proceedings consistent with this opinion.

ROVIRA, J., dissents, and VOLLACK and MULLARKEY, JJ., join in the dissent.

ROVIRA, Justice, dissenting:

Recognizing a duty by a provider of alcoholic beverages to protect a consumer from his own intoxication denigrates the concept of individual responsibility, encourages overindulgence, and contravenes public policy. Accordingly, I respectfully dissent.

Petitioner's first claim is grounded in common law negligence. We must examine, therefore, whether her son, Timothy Lyons, could have recovered for his injuries had he survived. Until recently, the common law provided no remedy against one who furnished liquor to a person who voluntarily became intoxicated and consequently injured himself or another. This rule was based on the theory that the proximate cause of injury was the act of the consumer in drinking the liquor and not the act of the person providing it.

A proximate causation analysis balances philosophic, pragmatic, and moral approaches to causation. *See Kowal v. Hoffher*, 181 Conn. 355, 436 A.2d 1 (1980). A policy decision as to which party should be held responsible for a particular injury is often incorporated into the concept of "proximate cause." The common law rule that the provider of alcohol did not "cause" the injury, reflects the decision that human beings, drunk or sober, are responsible for their own torts. *See Wright v. Moffitt*, 437 A.2d 554 (Del.1981); *State v. Hatfield*, 197 Md. 249, 78 A.2d 754 (1951). Common law did not recognize the existence of proximate cause because an intoxicated person's injury "was the result of his own negligence or his own voluntary act of rendering himself incapable of driving a car rather than the remote act of the [provider] in dispensing the liquor...." *Reed v. Black Caesar's Forge Gourmet Restaurant*, 165 So.2d 787, 788 (Fla.App.1964).

The common law rule proved to be harsh in those cases where an intoxicated person injured an innocent third party. Because the third party had no role in causing the inebriate's intoxication, whereas the provider and the consumer both participated in placing the dangerous force in motion which eventually injured the third party, it was considered fair to recognize a cause of action in favor of the third party against the provider of alcohol. We recognized such an action in *Largo Corp. v. Crespin*, 727 P.2d 1098 (Colo.1986). Almost every jurisdiction has recognized or established a cause of action for the innocent third party,

either through dram shop legislation or judicially created common law. *See Sorensen v. Jarvis,* 119 Wis.2d 627, 350 N.W.2d 108 (1984) (appendix contains list of those jurisdictions which have recognized common law liability against a tavern owner for injuries sustained by third persons as a result of the acts of an intoxicated patron).

However, these same compelling reasons are not found where the consumer of alcohol himself is injured. Although interpreting a dram shop act, the Minnesota Supreme Court aptly stated: "To hold otherwise, we believe, would be to permit one who has been an intentional accessory to the illegality to shift the loss resulting from it to a person no more responsible for the damage than he himself has been. So considered, the case is different from that of the party who suffers loss at the hands of a person with whose intoxication he had no involvement...." *Turk v. Long Branch Saloon,* 280 Minn. 438, 442, 159 N.W.2d 903, 906 (1968). This sentiment was also expressed in *Reed v. Black Caesar's,* 165 So.2d 787, 788 (Fla.App.1964), when the court stated: "We find no authority, absent legislative enactment, to extend the same protection to those who become voluntarily drunk so that a right of action arises in them because of injury caused by their own intoxication as is sometimes extended to third persons who are injured by such intoxicated persons." Many jurisdictions which have created a cause of action for an innocent third party have denied a cause of action to the consumer himself. *See, e.g., Sutter v. Hutchings,* 254 Ga. 194, 327 S.E.2d 716 (1985); *Bertelmann v. Taas Assoc.,* 735 P.2d 930 (Haw.1987); *Cuevas v. Royal D'Iberville Hotel,* 498 So.2d 346 (Miss.1986); *Trujillo v. Trujillo,* 104 N.M. 379, 721 P.2d 1310 (1986); *Miller v. City of Portland,* 288 Or. 271, 604 P.2d 1261 (1980).[1]

Courts have denied a claim to an intoxicated person who injures himself on sever-al grounds. Some courts have retained the common law rule that the consumer's injuries are caused by his own actions rather than those of the provider of alcoholic beverages. *See Nolan v. Morelli,* 154 Conn. 432, 226 A.2d 383 (1967); *Wright v. Moffitt,* 437 A.2d 554 (Del.1981); *Reed v. Black Caesar's,* 165 So.2d 787 (Fla.App.1964); *Fisher v. O'Connor's, Inc.,* 53 Md.App. 338, 452 A.2d 1313 (1982); *Yoscovitch v. Wasson,* 98 Nev. 250, 645 P.2d 975 (1982); *Webb v. Regua Ltd. Partnership,* 624 F.Supp. 471 (E.D.Va.1985).

Other courts have found that the intoxicated person assumed the risk, was contributorily negligent by law, or defeated his own cause of action through his willful and wanton misconduct. *See Sissle v. Stefenoni,* 88 Cal.App.3d 633, 152 Cal.Rptr. 56 (1979); *Sutter v. Hutchings,* 254 Ga. 194, 327 S.E.2d 716 (1985); *Davis v. Stinson,* 508 N.E.2d 65 (Ind.App.1987); *Thrasher v. Leggett,* 373 So.2d 494 (La.1979); *Swartzenberger v. Billings Labor Temple,* 179 Mont. 145, 586 P.2d 712 (1978); *Tome v. Berea Pewter Mug, Inc.,* 4 Ohio App.3d 98, 446 N.E.2d 848 (1982); *Kemock v. Mark II,* 62 Ohio App.2d 103, 404 N.E.2d 766 (1978).

A third approach used by courts to deny liability is to find that the provider of intoxicating beverages owes the consumer no duty to protect him from the results of his own intoxication, or that public policy considerations preclude the creation of a cause of action. *See Bertelmann v. Taas Assoc.,* 735 P.2d 930 (Haw.1987); *Trujillo v. Trujillo,* 104 N.M. 379, 721 P.2d 1310 (1986); *Allen v. County of Westchester,* 109 A.D. 2d 475, 492 N.Y.S.2d 772 (1985); *Miller v. City of Portland,* 288 Or. 271, 604 P.2d 1261 (1980); *Olsen v. Copeland,* 90 Wis.2d 483, 280 N.W.2d 178 (1979) (overruled in cases where third party is injured); *Garcia v. Hargrove,* 46 Wis.2d 724, 176 N.W.2d 566 (1970) (overruled in cases where third party is injured).

---

**1.** The majority assumes that, because we recognized a cause of action to an innocent third party injured by an inebriated consumer, we are inexorably bound to grant a cause of action to the injured consumer as well. I note that even after the courts in Georgia, Hawaii, New Mexi-co, and Oregon judicially created a cause of action in favor of an injured third party, they found that where a consumer injures himself the situation is sufficiently distinguishable so as to preclude recovery. I believe that we should deny recovery on the same basis.

Finally, several courts have declined to make a public policy determination, and have deferred to the legislature on this issue. *See Carr v. Turner,* 238 Ark. 889, 385 S.W.2d 656 (1965); *Felder v. Butler,* 292 Md. 174, 438 A.2d 494 (1981); *Holmes v. Circo,* 196 Neb. 496, 244 N.W.2d 65 (1976).

I believe, as did the court of appeals in *Lyons v. Nasby,* 748 P.2d 1341 (Colo.App. 1987), that the best way to approach this issue is to determine whether the provider of intoxicating beverages owes a duty to protect a consumer from his own intoxication. Although I agree that a provider owes a duty to protect an innocent third party from the results of a consumer's intoxication, I do not believe that this duty extends to the intoxicated person himself.

The determination of whether a duty is owed involves weighty policy considerations. One court has described the considerations involved in determining whether a duty exists as follows:

An affirmative declaration of duty simply amounts to a statement that two parties stand in such relationship that the law will impose on one a responsibility for the exercise of care toward the other. Inherent in this simple description are various and sometimes delicate policy judgments. The social utility of the activity out of which the injury arises, compared with the risks involved in its conduct; the kind of person with whom the actor is dealing; the workability of a rule of care, especially in terms of the parties' relative ability to adopt practical means of preventing injury; the relative ability of the parties to bear the financial burden of injury and the availability of means by which the loss may be shifted or spread; the body of statutes and judicial precedents which color the parties' relationship; the prophylactic effect of a rule of liability; ... and finally, the moral imperatives which judges share with their fellow citizens—such are the factors which play a role in the determination of duty.

*Raymond v. Paradise Unified School Dist.,* 218 Cal.App.2d 1, 3–4, 31 Cal.Rptr. 847, 851–52 (1963). *See also Swartz v. Huffmaster Alarms Sys.,* 145 Mich.App. 431, 377 N.W.2d 393 (1985).

In applying these factors, I do not find that a provider stands in such a relationship to an inebriated consumer that the law should impose a duty on the provider to act for the benefit of the consumer. The concerns of public policy do not extend to protect an intoxicated adult from the results of his own intoxication. A person who intends to drink, before he picks up that first glass of liquor, should be aware that he is solely responsible for whatever havoc he may wreak upon himself. To give such person a cause of action against the provider shifts the responsibility from the imbiber, and says that to this extent the consumer need not be responsible. Any shifting of the blame from the intoxicated person, especially an intoxicated driver, is contrary to sound public policy. *See Olsen v. Copeland,* 90 Wis.2d 483, 280 N.W.2d 178 (1979).

This underlying rationale, that a consumer of alcoholic beverages should be responsible for his own actions, was explained in *Kindt v. Kauffman,* 57 Cal.App.3d 845, 855–58, 129 Cal.Rptr. 603, 610–12 (1976):

The inestimable gift of reason and self-control cries out for preservation in every person, and the duty of its preservation devolves upon each member of the public. When the restraint of reason and the ability to care for one's self are perverted by a conscious, self-indulgent act of voluntary intoxication which temporarily casts off those powers, no societal or personal wrong, nor violation of public or social policy is accomplished or violated if the actor is alone held answerable for his injury....

....

Government paternalism protecting people from their own conscious folly fosters individual irresponsibility and is normally to be discouraged.... To go yet another step and allow monetary recovery to one who knowingly becomes intoxicated and thereby injures himself is in our view morally indefensible.

....

... Heretofore, no recovery has been allowed such a plaintiff; to now allow it in any degree would be to award a pure and simple financial windfall to an undeserving plaintiff, which no amount of temporal theorizing can change.

I agree that imposing liability on a provider would contravene public policy. Rather, we should be guided by the policy that "human beings, drunk or sober, are responsible for their own torts." *State v. Hatfield*, 197 Md. 249, 78 A.2d 754, 756 (1951). Allowing petitioner's cause of action against the respondent would only erode that responsibility.[2] To recompense an intoxicated person for injury to himself or his property resulting from his own overindulgence tends to encourage, rather than to discourage, such overindulgence.

In addition, I do not believe that placing liability on the seller of alcoholic beverages would deter service of a drink to a visibly intoxicated customer. The seller already has a statutory duty not to serve intoxicants to one who is visibly intoxicated. If he breaches this duty, he risks both criminal penalties and civil suits brought by injured third parties. No additional deterrence will be gained by imposing liability for an intoxicated consumer's injury. However, such added liability will relieve a consumer of his personal responsibility. I believe that it cuts against the grain of good public policy to provide the person with the primary responsibility recourse for losses against one who is only secondarily responsible.

This situation may be compared to one in which a participant in an illegal act seeks to recover from another participant in that act. In such a case, the parties are deemed *in pari delicto*, and the law will aid neither. *See, e.g.; Isaak v. Perry*, 118 Colo. 93, 193 P.2d 269 (1948); *Italian–American Bank v. Lepore*, 79 Colo. 466, 246 P. 792 (1926). Here, Timothy Lyons willingly drank the alcohol served to him while he was intoxicated. He then got behind the wheel of his car in a drunken state, contrary to law, and died as a result. "To allow recovery in favor of one who has voluntarily procured a quantity of liquor for his or her own consumption with full knowledge of its possible or probable results 'would savor too much of allowing [said] person to benefit by his or her own wrongful act.'" *Allen v. County of Westchester*, 109 A.D.2d 475, 480, 492 N.Y.S.2d 772, 776 (1985) (quoting *Buntin v. Hutton*, 206 Ill.App. 194, 199 (1917)). *See also Bertelmann v. Taas Assoc.*, 735 P.2d 930 (Haw.1987); *Trujillo v. Trujillo*, 104 N.M. 379, 721 P.2d 1310 (1986); *Miller v. City of Portland*, 288 Or. 271, 604 P.2d 1261 (1980).

The majority concludes that the policy concerns enumerated above will be accommodated by submitting the issue of comparative negligence to the jury. I disagree. The jury's function is to determine questions of fact, not to determine whether a duty exists. This is a question of law. Therefore, the decision whether a person may recover for the results of his own intoxication should be made by this court.

Even if it were proper to impose a duty on the provider of intoxicating beverages, in this case petitioner should be precluded from recovering because her son voluntarily consumed the liquor and then drove his car in violation of law. Where one consciously chooses a dangerous course of action with knowledge of facts which, to a reasonable mind, create a strong probability that injuries to others will result, his conduct is wanton. *Steeves v. Smiley*, 144 Colo. 5, 354 P.2d 1011 (1960). I can reach no other conclusion than to find that the petitioner's son acted in a willful and wanton manner by driving his car on mountain roads while intoxicated. I believe, as a matter of law, this degree of recklessness evidenced an absolute failure to exercise reasonable -care under conditions which rendered probable a likelihood that harm

---

**2.** In criminal law, a person who voluntarily becomes intoxicated is liable for his acts in committing a crime. Intoxication is no defense to a crime where the *mens rea* is "knowingly," "willfully," "recklessly," or "with criminal negligence." *Hendershott v. People*, 653 P.2d 385 (Colo.1982), *cert. denied*, 459 U.S. 1225, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983). This is because self-induced intoxication, by its very nature, is morally blameworthy. *Id.* at 396.

would result to himself or others, and thus bars petitioner from recovering.

Several other courts have reached the same conclusion. In *Trenier v. California Investment & Development Corp.*, 105 Cal.App.3d 44, 164 Cal.Rptr. 156 (1980), the court found that the plaintiff, who drove when he was clearly in no condition to do so and created a potent and lethal threat not only to his own safety, but also to the safety of any others, was guilty of willful misconduct and could not recover against the person who served him alcoholic beverages. In *Davis v. Stinson*, 508 N.E.2d 65 (Ind.App.1987), the court determined that a person who drives while intoxicated is guilty of willful and wanton misconduct as a matter of law, and recovery is barred. *See also Kemock v. Mark II*, 62 Ohio App. 2d 103, 404 N.E.2d 766 (1978).

Where, as here, an intoxicated person drives his vehicle in reckless disregard for the safety of others, he is by law, more than 50% responsible for any injuries he causes to himself. As between the provider and the consumer of an alcoholic beverage, the consumer has the last opportunity to avoid the effect of the alcohol, by not drinking or not driving, and thus as between the two, the negligence of the consumer is the greater. *Sutter v. Hutchings*, 254 Ga. 194, 327 S.E.2d 716 (1985). I would, therefore, find as a matter of law that petitioner is barred from recovering in this case.

Petitioner also claims that the provider was negligent per se because section 12–46–112, 5 C.R.S. (1973) (beer code), and section 12–47–128, 5 C.R.S. (1973) (liquor code), were violated. In *Largo Corp. v. Crespin*, 727 P.2d 1098 (Colo.1986), we determined that section 12–47–128(1)(a) was designed, at least in part, to protect third parties from injuries caused by the sale of alcohol to a visibly intoxicated person. We stated that one of the purposes of the liquor code was to insure public safety. However, there is no indication that this provision was intended to protect an intoxicated person from the consequences of his own intoxication. The prohibition against serving alcohol to an intoxicated person was created to protect the general public from drunk driving accidents. *See Bertelmann v. Taas Assoc.*, 735 P.2d 930 (Haw. 1987). I do not believe the legislature intended to impose liability upon a seller of alcohol [3] to an adult individual, who voluntarily consumes the alcohol, and then by reason of his intoxicated condition, injures himself. I would, therefore, find that such a person is excluded from the class of persons protected by this safety statute. *See Noonan v. Galick*, 19 Conn.Supp. 308, 112 A.2d 892 (1955); *Wright v. Moffitt*, 437 A.2d 554 (Del.1981); *Fisher v. O'Connor's, Inc.*, 53 Md.App. 338, 452 A.2d 1313 (1982); *Cuevas v. Royal D'Iberville Hotel*, 498 So. 2d 346 (Miss.1986); *Hamm v. Carson City Nugget, Inc.*, 85 Nev. 99, 450 P.2d 358 (1969).

For the foregoing reasons, I would hold that a person who becomes intoxicated, and injures himself as a result of such intoxication, is solely responsible for his losses. In this way, personal responsibility is reinforced, rather than passed to another.

Accordingly, I respectfully dissent.

I am authorized to say that Justice VOLLACK and Justice MULLARKEY join me in this dissent.

---

**3.** As noted in the majority opinion, at 1253, the legislature in 1986, decided, as a matter of public policy, that no civil action may be brought by the consumer against the seller or server of alcoholic beverages. While the 1986 amendment does not apply to this case, it supports, at least inferentially, my view of the underlying legislative intent. *See Klotz v. Persenaire*, 138 Mich.App. 638, 360 N.W.2d 255 (1984).